COLE, et al v. SOUTHERN BELL TEL. & TEL. CO., et al.
No. 68-13081.

Circuit Court, Dade County.

September 3, 1968.

Weinstein, Weissenborn & Burr, Miami, for plaintiffs.

Walton, Lantaff, Schroeder, Carson & Wahl, Miami, for defendant Southern Bell Tel. & Tel. Co.

Kenneth Gatlin, Tallahassee, for the Public Service Commission.

HENRY L. BALABAN, Circuit Judge.

*Final judgment:* This cause came on for hearing on the motion of the plaintiff for temporary relief and the several motions of the defendants to abate and to dismiss and the court having heard arguments of the attorneys for all involved parties and being fully advised in the premises, finds and concludes as follows —

Plaintiff, individually, and on behalf of others similarly situated and as a class complains against a public utility, Southern Bell Telephone & Telegraph Co. ("company" hereafter), and the individual members of the Florida Public Service Commission, a Florida agency ("commission" hereafter).

The plaintiff sues in her capacity as a customer of the company.

The complaint, drawn professionally, inter alia, alleges that the Florida Constitution grants legislative power over common carriers; that the commission is a creature of the Florida legislature, the duties and functions of this agency being detailed in chapter 350, Florida Statutes 1967, and this chapter was adopted by reference as part of the complaint; that the regulation of telephone companies is contained in chapter 364, Florida Statutes, and this chapter, likewise, was adopted as part of the complaint.

The complaint refers to §364.03(1), Florida Statutes, wherein it is provided that telephone rates "shall be fair, just, reasonable and sufficient." It is further alleged that for several years last past the company collected from plaintiff, and others, monies "above and beyond" ordinary customer collections, for payment of its federal income taxes; that $10,244,144.85 was so collected from the plaintiff and others, as customers of the company, for the purpose of paying federal income taxes but that this sum was not so used but either wholly or a large part of the same was wrongfully converted by claiming the $10,244,144.85 as a credit against its income tax in such manner that the credit will "either not be passed on at all to the plaintiff and other customers" or that it will not be passed "within the time period prescribed in the provision of the U. S. Internal Revenue Act under which the credit involved is permitted."

The complaint further alleges that a hearing had been scheduled on September 5, 1968 at Jacksonville by the commission on the company's petition that it be allowed to recover — "the revenue effect of the income tax surcharge imposed by the Revenue and Expenditure Control Act of 1968 by the 2.8% adjustment factor previously authorized, or, in the alternative that it be permitted to recover the revenue effect of the income tax surcharge through putting into effect revised tariffs which would increase the com-

pany's Florida intrastate annual revenues by the same amount as the adjusted factor of 2.8% by four separate methods: (1) Increasing service connections, etc. charges; (2) by applying a monthly rate for published and semi-private numbers; (3) by increasing the monthly rate for additional directory listings; and (4) increasing all classes of business and residence service 25 cents and 10 cents, respectively and proportionate increase in trunk rates," etc.

The complaint asserts that the sum of $10,244,144.85 heretofore referred to is more than sufficient for the company to pay the additional federal income taxes, and states that the maximum exposure would be 5.8 million dollars, and that "as a matter of law" the commission would be imposing an "unreasonable" rate on the plaintiff and the class if it permitted the company to increase its rates to raise additional monies from which to pay the surcharge.

The complaint further alleges that the individual members of the commission are acting in violation of the powers, duties, and authority of their respective offices in holding the scheduled hearing on September 5, 1968, that the members theretofore "acted in violation of and in excess of the powers, duties and authority of their respective offices" by permitting the company to collect the $10,244,144.85 and to convert the said sum.

The complaint claims that the company is liable in damages in the amount of $10,244,144.85 or, alternatively, for that part of the $10,244,144.85 which is in excess of the amount required for the company's use to discharge the surcharge tax.

The plaintiff, for herself and others, claims a deprivation of constitutional right by the actions of the defendant by the taking of property without due process of law.

The plaintiff alleges that she is in doubt as to whether she and the members of the class have been deprived of their rights by the continuing actions of the defendants.

The complaint prays that jurisdiction be taken by this court and the equities adjudged, that a temporary injunction be issued restraining the commission from holding the aforesaid hearing at Jacksonville, that a declaratory and equitable decree be entered for the plaintiff and others, that an accounting be made of the alleged "excess monies", that a common fund be created for the plaintiff and others to effectuate refunds, that the telephone company pay interest on $10,244,144.85, and that the plaintiff be awarded a reasonable attorney's fee.

The company filed its motion to dismiss, the grounds for which are that the plaintiff merely seeks legal advice by her complaint, that the requirements of a class suit have not been met, that the plaintiff is attempting to by-pass the commission which has primary jurisdiction in the legislative function of making rates and charges, that the allegations of the complaint are purely speculative as to the result of such proceedings, that there has been a failure to exhaust administrative remedies, that plaintiff seeks to by-pass the remedy of certiorari to the Supreme Court from any final order of the commission, and that no predicate is laid for the reparations which the plaintiff seeks.

The members of the commission moved to abate and to dismiss urging the lack of jurisdiction in this court over the subject matter because the complaint seeks to have this court engage in making rates for a public utility, the exclusive jurisdiction for which lies in the commission, and that the plaintiff is trying to avoid certiorari to review action which plaintiff contemplates the commission may take, and that the plaintiff does not allege an existing right or privilege. The commission's motion to dismiss urges that the complaint would prohibit the commission from performing its pre-scribed duties, that there is a proceeding pending which contemplates a full investigation into the reasonableness of the company's earnings and its charges and that the plaintiff has not exercised her right to raise the issues involved in the complaint in the scheduled September 5, 1968 hearing.

A copy of order no. 4408 before the commission was made a part of the motion to abate and the motion to dismiss of the commission members. This order refers to establishment of a new docket and requires the company to file certain statistical data. This order sets forth in chronological form the developments in connection with the company's previous petition in which it asked for relief from the 10% federal income tax surcharge; that its request was granted by the commission's order and later was rescinded by commission order; that a petition for reconsideration was filed from the order of rescission; and that the petition for reconsideration requests leave to recover the revenue effect of the 10% income tax surcharge by applying a 2.8% adjustment factor to subscribers' monthly bills or as an alternative that it be per-mitted to recover the revenue effect of the surcharge by making effective revised tariffs which would increase the company's Florida intrastate revenue by the same amount as the adjustment factor by applying the four processes set out on page five of the plaintiff's complaint and page two of this judgment.

The appendices to order no. 4408 set out certain requirements concerning statistical data to be furnished to the commission for

its use in the rate investigation, which, to this court, with its limited knowledge of the technical rate making process, appear to be very complete for the purpose of evaluating the subject matter.

It is noted also that in the notice of the commission hearing at Jacksonville on September 5, 1968 the petitioner as well as *"all other interested parties"* will "be given an opportunity to be fully heard on the relevant issues raised by the said petition for reconsideration and amended petition for alternative relief, either through the presentation of relevant evidence or oral argument or both."

The plaintiff filed a memorandum of law which states her position with clarity. In it she admits the authority of the commission to be broad but not unlimited, she alleges that the commission abused is discretion when it permitted the company to collect "excess" tax monies, and that it would be an illegal act of the commission to permit the further collection of monies with which to pay the company's taxes — *"when it already has more than enough money that it collected from its customers, allegedly to pay its taxes,* from which to satisfy its additional tax liability . . ."

She claims that the relief sought by the company would be illegal if granted, and that a court of equity should properly prevent the commission from holding a hearing to consider granting such illegal "relief." In support of her position plaintiff cites Red Top Sedan Service, Inc. v. S. & J. Transportation, Inc., 150 So.2d 450 (Fla. App. 3rd Dist. 1963), and quotes therefrom as follows —

> Pursuant to the aforesaid authority, an aggrieved party may have the right to petition the Supreme Court of Florida for review by writ of certiorari, but this is not the exclusive remedy afforded a person aggrieved or injured by the issuance of an illegal certificate of necessity and convenience by the Florida Railroad and Public Utilities Commission. If this remedy by certiorari is inadequate, then resort to the traditional court of chancery may be had for appropriate relief.

To strengthen her position plaintiff cites Estrada v. Ahrens, 169 F. 2d 690, which holds that — "A court is the proper place to test unauthorized administrative acts."

The main thrust of the plaintiff's case is contained on page 6 of her memorandum of law where she states — ". . . the public utility is clearly not entitled to collect from its customers monies for expenses not incurred by the utility, and thus a regulatory agency that permits this to be done is clearly abusing the discretion placed in it."

Plaintiff argues that this court is not being asked to prescribe a rate which, according to the defendants, would be beyond the jurisdiction of this court but rather, it is being asked to rule that

it is illegal for a public utility to include in its rates a charge for an expense, i.e., the utility's income taxes, not actually expended or to be expended. This court, plaintiff contends, has the power to place a limitation on what the regulatory agency can include in its rates. Plaintiff places great reliance on Miami Bridge Co. v. Miami Beach Ry. Co. (Fla. 1943), 12 So.2d 438, 446, and quotes therefrom —

> The legislature has not conferred any rate making power on the circuit court of the 11th judicial circuit or the judges and we know of no authority which would justify said circuit court to make any particular rate or rates to be charged by any public utility. But we do hold that the said circuit court had jurisdiction, if the evidence to be taken justifies it, to hold the maximum rate established by the legislature for the passage of buses over the defendant's causeway and bridges to be unreasonable, and to set it aside, under the well settled judicial power to set aside and hold as invalid any unjust, unreasonable and discriminatory rate or rates, made either by the legislature directly or by any administrative body authorized by the legislature to act in that regard, and to enjoin the enforcement of such unreasonable rate or rates. If the courts do not have this power, public utilities could invade the constitutional rights of the public and of individual members of the public, which fundamental rights are protected by the Bill of Rights of our Florida Constitution. Under the circumstances of this case, we think the chancellor does have the power to strike down the legislative made rate in this case, if the evidence yet to be taken shows it to be clearly excessive, unreasonable and unjust; but we also hold that the chancellor might go a step further and indicate a maximum reasonable rate which if exceeded by the public utility the court would likewise hold unreasonable and invalid, and enjoin its enforcement. If would then be the duty of this public utility to make a rate for the passage of buses over its causeway and bridges which would not be unreasonable in the light of the court's decision. And if the utility should not promptly make such a rate, it could be compelled to do so, either by mandatory injunction or by mandamus. Of course, in this matter of the reasonableness or unreasonableness of rates many factors must be considered, including the rights of a public utility to reasonable compensation for its services and the equal protection of the laws . . .

That there has been a violation of the plaintiff's rights by deprivation of property without due process of law, and that to grant the relief prayed for at the commission hearing "would be to compound the constitutional deprivation already committed," are the chief complaints of the plaintiff.

The defendants cite, in support of their motion to dismiss, Odham v. Foremost Dairies, Inc., 128 So.2d 586 (Fla. 1961), which was a case brought to enjoin the Milk Commission from conducting a hearing on an order to show cause why plaintiff distributor's license should not be suspended. This case holds —

> Courts are extremely reluctant to interfere with actions of administrative bodies in the performance of their duties in the absence of clear

and unmistakably flagrant violation of a constitutional or statutory right of the affected party. * * *

The Supreme Court must assume that the Milk Commission will follow the mandates of the Constitution and the laws in discharge of their duties. * * *

Where an administrative remedy is provided by statute, relief must be sought by exhausting this remedy before the courts will act. * * *

Judicial intervention with administrative action is justified only where the invalidity of the administrative act is not subject to reasonable differences of opinion. * * *

The Legislature of this State in creating the Florida Milk Commission vested it with broad powers in the field it was created to regulate. The constitutionality vel non of this act has long since been decided by this Court so there no longer can be any doubt of the power of this Commission to act within the limits of its authority as prescribed by law. Administrative boards and bureaus of this kind are now permanent fixtures in our government. Such boards and bureaus have been the source of great controversy in recent years and there undoubtedly have been abuses from time to time of the powers which are necessarily vested in them. On the other hand, all modern students of government recognize the fact that, in the complex society in which we live, the orderly administration of the affairs of the people require such agencies. In those instance where there have been gross or flagrant abuses of power, or where such agencies have attempted to act beyond the powers delegated to them, the courts have unhesitatingly intervened. On the other hand, these agencies have been vested with powers and responsibilities in their field of operation by the legislative branch of the government. * * *

Promiscuous intervention by the courts in the affairs of these administrative agencies except for most urgent reasons would inevitably result in the dethronement of the commissions and the substitution of the courts in their place and stead. * * *

... the injunctive processes may not be set in motion to enjoin such an agency from the performance of its duties and responsibilities under the law, and further . . . admittance in a court of equity can not be gained by the "declaratory relief" route.

The Supreme Court ruled there should be no interference with the commission.

The defendants cite Tampa Port Authority v. Deen, 179 So.2d 416 (Fla. App. 1965), where it is said —

The courts of this state have been extremely reluctant to interfere with the action of administrative bodies in the proper performance of their responsibilities, and have done so only when there is a clear and unmistakable violation of constitutional and statutory rights of the affected parties. Mere allegations that an administrative agency might take actions which, if adopted, would be unlawful or ineffective constitute no ground for injunctive interference with the internal functioning of such agency. The actions of such agencies are to be tested by the actions which they actually take. Such actions, if invalid or beyond the authority

of such agency, can be tested in appropriate proceedings wherein it may be necessary for the court to determine the enforceability of such actions as the same may affect the rights of others.

The defendants also cite Florida State Board of Medical Examiners v. James, 158 So.2d 575 (Fla. App. 3rd Dist. 1963), which quotes extensively from Odham v. Foremost Dairies, supra, and holds that there was an unwarranted interference with the jurisdiction conferred upon the medical agency, that the doctor was merely speculating about the result from the board hearing. The Third District Court of Appeal held that the administrative remedies had not been exhausted, and that the court would not permit an unwarranted extension of the declaratory decree statute.

Also cited by the defendants in support of their position is Carol City Utilities, Inc. v. Dade County, 143 So.2d 828, which holds that the declaratory decree statute could not be used as a substitute for certiorari to review an administrative order of a city water and sewer board which was challenged as invalid and that certiorari was the only remedy available. This case also came down from the Third District Court of Appeal.

Florida Hotel and Restaurant Commission v. Marseilles Hotel Co., 84 So.2d 567, was cited to the court by the company in which the Supreme Court held that a hotel operator had an adequate remedy under statutory provisions for judicial review of a commission order, and that under pretext of seeking declaratory relief the hotel operator could not maintain suit to enjoin the commission from holding a hearing concerning the hotel's license. The case further held that — "Existence or non-existence of some right, status, immunity, power or privilege" must be shown in order to entitle the moving party to declaratory relief. The court would not permit what it termed "an unauthorized extension" of the declaratory decree statute to a point where it might be substituted for another normally appropriate action in the absence of a bona fide foundation for a declaratory decree.

Pursuing its motion to dismiss the company urged the court to consider the case decided by the Second District Court of Appeal in State vs. Anderson, 164 So.2d 265, which holds that the jurisdiction of the circuit court is clearly defined by the constitution of this state, and its exclusive, original jurisdiction does not include jurisdiction over the subject matter of proceedings before the Florida Real Estate Commission, and that the appellate jurisdiction of a circuit court does not include appellate review of proceedings before said commission — the circuit court does not have jurisdiction to entertain prohibition proceedings initiated to prohibit an agency of the state from exercising its lawfully delegated judicial

powers where the circuit court does not have appellate jurisdiction over such agency.

In the foregoing paragraphs there has been an attempt made to state the claims of the plaintiff, the respective positions of the several defendants and to analyze the legal authorities proferred by each side to bolster their arguments. In simple language, the issue boils down to a decision to be made by this court whether the problem is an administrative one or a judicial one. Did the Florida legislature intend the issues to be left to the administrative agency for initial determination?

In the court's research of this problem an "hospitable reception" has been given to the rule making and adjudicatory functions of administrative agencies and recognition of them has been given as "co-ordinate instrumentalities of justice." "In furtherance of these principles, the state courts have developed a number of interrelated doctrines requiring litigants to address their complaints initially to administrative tribunals, rather than to the courts, and further requiring litigants to exhaust all possibilities of obtaining relief through administrative channels before appealing to the courts. These doctrines may be described as principles requiring the utilization and exhaustion of administrative processes as conditions precedent to judicial review."

The doctrine of "prior resort" or as otherwise called the doctrine of "primary jurisdiction," or the doctrine of "exclusive administrative jurisdiction," when applicable, requires a state court to refuse jurisdiction if a suit involves issues that could have been presented in the first instance to an administrative agency. The doctrine does not operate to remove these issues completely from the sphere of judicial action — its operation is, rather, to determine whether the initial consideration of the matter should be by a court or by an agency. If it is held that the doctrine is applicable, and prior resort to the agency is required, the case may still (in appropriate instances) be considered by the courts subsequent to the administrative determination.

The reasons for the rule are two — first, to take full advantage of administrative expertness; second, to attain uniformity of application of regulatory laws. The cases are in agreement that prior resort should be required where these reasons justify its application.

Whether or not the requirement of prior resort should be imposed is not infrequently said to depend on the court's determination whether the legislature intended the issues to be left to the administrative agency for initial determination. But since there rarely appears an affirmative indication of legislative intent, the courts

are on the whole free to determine on the basis of policy considerations whether prior resort should be required.

The doctrine requiring prior resort is not an inflexible mandate. It is predicated on an attitude of judicial self-restraint, and is applied when the court believes that considerations of policy recommend that the issue be left to the administrative agency for initial determination. This determination involves the court's appraisal as to the need or desirability of prior resort to administrative determination. State courts have made it plain that the application of the requirement involves the exercise of a judicial discretion.

One Supreme Court case is helpful because the Florida law contains only an *indication* of legislative intention, namely, that the question should be first presented to the public utilities commission — Southern Bell Tel. & Tel. Co. v. State, ex rel. Transradio Press Serv., Inc., 53 So2d 863, decided in 1951 in which it is stated at page 865 —

> So there can be no doubt that the legislature intended that such proceedings should be initiated before and conducted by the . . . Commission. The Act does not prohibit the use of appropriate remedies before the court and while we think it should have been brought before the Commission the question is here and squarely presented, so we are disposing of it rather than imposing the burden on litigants of litigating the cause in another forum. (Italics added.)

Bearing on the determination of this question also is the doctrine requiring exhaustion of administrative remedies. In vol. 2, *State Administrative Law* (Cooper) in the chapter entitled *"The Requirement of Exhausting Administrative Remedies — Reasons for the Rule and its Historical Background,"* we find the following —

> Not only must an issue cognizable by an administrative agency be first presented to the agency rather than to the courts (in cases where it is deemed desirable to take advantage of the special experience of the agency and to attain thereby uniformity in the application of a regulatory statute) but there is a further requirement that the case must run the full gamut of administrative proceedings, before an application for judicial relief may be considered. This is the doctrine requiring exhaustion of administrative remedies.

> Considering the doctrines of prior resort and of exhaustion together, the net result is in effect that the administrative agency is entitled to the first and the next-to-last word. It must be given an opportunity to speak first (this is the doctrine of prior resort) and it cannot be deprived of the power to pass upon the case until it has spoken its final word with reference thereto. The last word is the court's, on judicial review.

> While the requirement of exhausting administrative remedies has a somewhat different historical background than the rule of prior resort, yet the two doctrines have developed into complementary parts of a general principle which ordinarily serves to preclude judicial consideration

of a question while there remains any possibility of further administrative action . . .

If appeals to the courts were permitted while a matter was still pending before an administrative agency, the result would be productive of much confusion and delay. Piece-meal litigation would be permitted. Unnecessary and even vexatious appeals could be taken. The work of the courts would be needlessly increased. Further, the taking of such interlocutory appeals would interfere with the most effective work of the administrative agencies themselves.

It is sometimes suggested that the doctrine is related to the familiar principle that official acts will be presumed to be correct and lawful — that if an error is committed in the initial steps of administrative activity it will be corrected by the higher administrative authorities.

But the underlying basis for the rule — the real reason for its existence (at least so far as the state courts are concerned) — is that it constitutes a doctrine of self limitation which the courts have evolved, in marking out the boundary lines between the areas of administrative and judicial action.

In considering and resolving the issue before this court due thought must be given to the matters of relative delay and expense, the necessity for taking evidence and making factual determinations thereon, the nature of the agency involved and the extent of judgment, discretion and expertise involved, and all other petinent factors which will fairly serve to aid in determining whether, on balance, the interests of justice dictate the extraordinary course of by-passing the administrative remedies made available by the legislature.

The plaintiff has expressed doubt of her ability to obtain a favorable result before the commission. The cases hold that even a justifiable belief that the administrative agency will determine the case adversely to the plaintiff does not excuse going through with and completing the administrative proceedings to the end, unfavorable result before applying for judicial relief. It has not been indicated by the commission what the result will be and whether it would be favorable or unfavorable to the plaintiff; even an indication of an unfavorable determination to this plaintiff would not be sufficient to withdraw the case from the commission. Arguments addressed to the matters of waste of time and futility of the process have not been successful; this has been the holding in various cases. The reason given is that if this type of argument were accepted then the rule would be destroyed. Relief is not unavailable — it rests in the Supreme Court by way of certiorari. The Supreme Court can set aside or modify what the administrative agency has done. The court will finally determine the issue and speak the last word. The conclusion then is that the agency cannot be by-passed to determine what is committed to it and if

it should err resort to the courts is still open after the agency has acted to correct the error, if error has been committed. The courts do not favor the by-passing of administrative agencies except in cases where there is a clear necessity for a prior judicial decision. The foregoing is explained well in *Administrative Law Treatise* by Davis, vol 3. §19.09, chap. 19, page 54 —

> ... in the words of the court: "Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience and by more flexible procedure. This formulation is preferable to some others, because it subordinates administrative specialization to uniformity and consistency and because it emphasizes the crucial fact that primary jurisdiction of an agency does not exclude the courts from exercising the final power in determining the relative strength of the antitrust policy.

Upon reflection, having given due regard and solicitude to the issues involved in this case, recognizing its widespread interest, appreciating the heavy responsibility upon it, all of the significant aspects having been weighed and given appropriate deliberation, it is the opinion of this court, and the court so finds, that the matter is not ripe, as a matter of policy, for judicial determination, and that justice requires the application of the principles of prior resort and exhaustion of administrative remedies, that by-passing the commission is not approved and that there is no clear necessity for a prior judicial decision. The court specifically finds that it will better serve the public by declining to act in this court before the matter has been considered by the commission and its staff who can utilize the required expertise. It further finds that the matter has already been before the said commission. (See commission order no. 4408).

This court has no jurisdiction, and, accordingly, it is ordered, adjudged and decreed that the several motions of the defendants be and the same are hereby granted and this cause is dismissed.

Tribute must be paid to the plaintiff, and to her attorneys, for drawing the attention of the community to the serious issue involved in this case. Their efforts on behalf of the public merit the approval and commendation of every public spirited citizen, and, though rebuffed by this court in their efforts to achieve a result where none can legally be had, it is hoped and expected that the interest of the plaintiff and her attorneys will not cease with this judgment and that the cause will continue and go forward and will be taken to the proper tribunal for adjudication.

The commission, through its attorneys, has assured the court that the relief sought in this court is obtainable before it upon proper proof and with the extensive interest in the case it goes without saying that the commission must give this matter its best effort, inquire into it with absolute impartiality and with a desire to ferret out the truth of the charges made by this plaintiff, and then, if proved, make a judgment that will be in the public interest.