128 So.2d 586 (1961)
J. Brailey ODHAM, As Chairman and James A. Acree, Wilmer W. Bassett, Jr., Robert G. Carter, Jackson Logan, Alex G. Shaw and Charlotte Tomlinson, As Members, Together Constituting the Florida Milk Commission; and the Florida Milk Commission, Appellants,
v.
FOREMOST DAIRIES, INC., a Corporation, Appellee.
No. 30803.
Supreme Court of Florida.
March 22, 1961.
Rehearing Denied April 26, 1961.
*588 Winston E. Arnow of Clayton, Arnow, Duncan & Johnston, Gainesville, for appellants.
Bedell, Bedell & Dittmar and Milam, LeMaistre, Ramsay & Martin, Jacksonville, for appellee.
DREW, Justice.
This interlocutory appeal was taken from an order of the trial court denying the motion of appellants for a summary final decree and appointing a special master to hear the cause and make findings on the merits and continuing in effect an injunction theretofore issued by the trial court enjoining appellants from holding a hearing on an order to show cause why appellee's license to sell milk and milk products issued to it by the Commission should not be suspended or revoked pursuant to Chapter 501, Florida Statutes, F.S.A. In the discussion which follows we will refer to the appellants as the Commission and to the appellee as the Distributor.

Jurisdiction
The complaint which initiated these proceedings in the trial court among other things prayed for a construction of Chapter 501, Florida Statutes, F.S.A., and particularly Sections 501.13(3), 501.07 and 501.09 and asserted that certain designated provisions of said statutes violated Section 12 of the Declaration of Rights of the Constitution of Florida, F.S.A. and the Fourteenth Amendment to the Constitution of the United States because such provisions were vague, general, ambiguous, indefinite and uncertain; it asserted that to suspend the Distributor's licenses upon the basis thereof would deprive the plaintiff of its property without due process of law. The question of the jurisdiction of this Court to entertain this appeal, under the provision of the Constitution which authorizes a direct review by certiorari of interlocutory orders or decrees passing upon chancery matters which upon a final decree would be directly appealable to this Court must first be disposed of;[1] in this case the question is a close one; nevertheless, upon consideration of the record and a careful analysis of the allegations of the complaint, we are satisfied that, in the event this cause reached the stage for the entry of a final decree, and if such decree were rendered upon the complaint as framed, it would inevitably *589 require the trial court to pass directly upon a state statute and conceivably construe a controlling provision of both the federal and State Constitutions.[2] In determining our jurisdiction, therefore, we must find in these cases that "there must be no alternative to the proposition that a directly appealable decree will essentially and beyond all question be the final result of the proceeding."[3] Indulging such assumption in this instance we reach the conclusion that this appeal is properly before us and that we have jurisdiction to determine the issues presented.

Background of Litigation
An understanding of the issues here requires a brief review of the background of this litigation and other litigation between these same parties arising out of many of the same statutes and regulations involved here which was recently disposed of by this Court.
On July 31, 1959, this Court handed down three opinions in three separate cases involving this Distributor and other distributors holding licenses from the Florida Milk Commission.[4] It would unduly burden the record to recite in detail the issues presented in those proceedings and the holding of this Court with reference to such issues. Suffice it to say, many of the propositions urged by the Distributor in the complaint involved in this appeal were involved in one or more of those cases. Rehearing was granted on the original opinions, the causes were reargued and the per curiam opinions on rehearing in each of the three cases were filed on June 22, 1960. The net result of the rehearing was to modify the original opinions in only one respect and that was a holding that a portion of Order No. 20-7 of the Milk Commission requiring a showing of cause in addition to the ninety days' notice in order to terminate a previously established course of dealings was invalid and unenforceable. In all other respects the first opinions were adhered to on rehearing. Petitions for rehearing of the per curiam opinions on rehearing were denied July 13, 1960 thus bringing to a close those phases of the litigation involved in the three suits above mentioned.
The complaint in this cause was filed February 19, 1960 by the Distributor. At the time of the filing of the complaint which again presents for decision many of the questions which were finally decided in the three cases above mentioned July 13, 1960, (some five months later) the questions raised in the three cases mentioned above were in the breast of this Court for consideration and had not been finally determined.

On the Merits
On January 27, 1960, the Milk Commission issued and served on the Distributor an order requiring it to appear before the Commission at 10:00 a.m., February 24, 1960, at the Hotel Roosevelt in Jacksonville, Florida, and then and there to show cause, if any it had, why its distributor's license to sell milk and milk products issued to it by the Commission should not be revoked pursuant to Chapter 501, Florida Statutes, F.S.A., for the reasons specifically set forth in eight counts in such order.[5] *590 Following receipt of a copy of the order to show cause, the Distributor filed its complaint for declaratory decree and injunction alleging inter alia its authority to do *591 business under licenses granted by the Commission, the magnitude of its operations in the State of Florida and elsewhere and the great, irreparable injury it would suffer in the event its licenses to do business in this State were revoked and asserting, among other things, that each and every count in the order to show cause was insufficient for one reason or another to warrant the revocation of its licenses. The complaint is exceedingly long and verbose but a careful examination of its contents substantiates the allegation in paragraph 23 thereof that "the primary purpose of this action is to obtain direct judicial protection from defendant's unlawful invasion of plaintiff's constitutional rights within Duval County where this action is instituted." Additionally however, the complaint prays for declaratory relief and that the Commission be enjoined pending said action and permanently from holding a hearing upon the order to show cause on the date designated or any other date and for a further restraining order against the Commission from instituting any other proceedings for the suspension or revocation of any license of the plaintiff by reason of any of the causes set forth in the order to show cause. The Milk Commission's motion to dismiss the complaint was denied by the trial court. No interlocutory appeal was prosecuted from this order, the effect of which was to hold that the complaint stated a cause of action. Thereupon the Commission filed its answer, equally as long and verbose as the complaint of the Distributor, generally admitting, denying or explaining the particular allegations of the complaint. Following the filing of the answer, the Commission filed its motion for summary final decree attaching thereto certain affidavits and certificates and certified copies of various orders of the Commission including the order to show cause. Upon consideration of such motion, the trial court entered the order now before us for review and described in more detail in the introductory paragraph of this opinion.
The Distributor argues that the failure of the Commission to seek review of the trial court's order overruling its motion to dismiss within the time allowed therefor[6] precludes it from assigning as error on this interlocutory appeal the order denying such motion to dismiss. The Distributor further contends that since the Commission elected not to appeal from such order denying the motion to dismiss the complaint the Commission cannot upon this appeal seek to have this Court put the chancellor in error for denying the motion to dismiss the complaint. The question of the correctness of the trial court's action in overruling the motion to dismiss is not assigned as error on this interlocutory appeal from the order denying the motion for summary judgment.[7] A determination of the questions presented and necessary to *592 a decision in a review of the latter order may result in the same disposition of the cause but the issues are basically different. An interlocutory appeal from an order overruling a motion to dismiss a complaint presents the basic question of whether the complaint within itself presents a cause of action for which relief may be granted by the court.[8] On the other hand, on a review of an order of a trial court denying a motion for summary judgment, the question for determination in the appellate court is simply whether the pleadings, depositions and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to a decree as a matter of law.[9] The fact that a motion to dismiss a complaint may have been disposed of by a trial judge does not prevent such trial judge, upon a consideration of the cause at a later stage of the proceedings on a motion for summary decree, from finding that there is no genuine issue as to any material fact and that the movant is entitled to a decree as a matter of law. This applies to both plaintiff and defendants. The scope of the judge's inquiry in the later motion is much broader than in the first. The end result may in both instances be the same but the reasons which impel the judgment are different.
We are, therefore, of the view and so hold that the failure of the Commission to appeal from the order denying its motion to dismiss does not prevent it from urging on this appeal that it was entitled to a judgment on its motion for summary judgment because there was no genuine issue of material facts and that, at that point, it was entitled to a judgment as a matter of law.
The Legislature of this State in creating the Florida Milk Commission vested it with broad powers in the field it was created to regulate. The constitutionality vel non of this act has long since been decided by this Court[10] so there can no longer be any doubt of the power of this Commission to act within the limits of its authority as prescribed by law. Administrative boards and bureaus of this kind are now permanent fixtures in our government. Such boards and bureaus have been the source of great controversy in recent years and there have undoubtedly been abuses from time to time of the powers which are necessarily vested in them. On the other hand, all modern students of government recognize the fact that, in the complex society in which we live, the orderly administration of the affairs of the people require such agencies. In those instances where there have been gross or flagrant abuses of power, or where such agencies have attempted to act beyond the powers delegated to them, the courts have unhesitatingly intervened. On the other hand, these agencies have been vested with powers and responsibilities in their field of operation by the legislative branch of the government. The courts have been extremely reluctant to interfere with the actions of such bodies in the proper performance of their duties and responsibilities in the absence of a clear and unmistakably flagrant violation of a constitutional or statutory *593 right of the affected party. Promiscuous intervention by the courts in the affairs of these administrative agencies except for most urgent reasons would inevitably result in the dethronement of the commissions and the substitution of the courts in their place and stead. The subject case is aptly illustrative of this point. The taking of testimony on the many issues presented by the complaint would merely be plowing in advance the ground that, under the law, should first be plowed by the Milk Commission. We must assume that these agencies will follow the mandates of the Constitution and the laws in the discharge of their duties. If they fail to do so, those aggrieved may resort to the courts for a review of such actions.
This Court has consistently held that where an administrative remedy is provided by statute, relief must be sought by exhausting this remedy before the courts will act. The doctrine has been referred to as the exhaustion of administrative remedies. It is related to the doctrine of primary jurisdiction.[11] An examination of the many authorities of texts on this question reveals a consistent attitude of the courts that judicial intervention with administrative action is justified only in those instances where the invalidity of the administrative act is not subject to reasonable differences of opinion.[12] Mr. Justice Black of the United States Supreme Court in a primary jurisdiction case observed: "Of course, where the statute is so obviously violated that `a sacrifice or obliteration of a right which Congress * * * created' to protect the interest of individuals or the public is clearly shown a court of equity could, in a proper case, intervene."[13] This Court has recognized and applied this very doctrine in many cases. For instance, in Florida Hotel and Restaurant Commission v. Marseilles Hotel Co., Fla. 1956, 84 So.2d 567, 569, we said, in disposing of an action for declaratory decree and to enjoin the Florida Hotel and Restaurant Commission from proceeding with a hearing to determine whether a hotel license should be revoked, that the injunctive processes may not be set in motion to enjoin such an agency from the performance of its duties and responsibilities under the law and further observed that admittance in a court of equity could not be gained by the "`declaratory relief' route." The Court said in that case:
"* * * it is clear that the real and only purpose of the suit was to enjoin the hearing on the Rule to Show Cause. This court `cannot permit an unauthorized extension of the Declaratory Decree Statute to a point where it might be substituted for another normally appropriate action in the absence of a bona fide foundation for a declaratory decree * * *.'"
Moreover, in that case, which we think is largely determinative of the issues here, we held that the statute there involved, afforded adequate protection against any denial of due process or other constitutional guaranty by appropriate judicial review.[14]
We think it clear from the disclosures of the complaint, the answer and various affidavits and other exhibits which were before the trial court upon its consideration of the motion for summary judgment *594 that the case made did not present a state of facts which would authorize the courts to interfere with the Commission in conducting the hearing on the questions presented by the order to show cause, and that the motion for summary judgment should have been granted and the cause dismissed.
Reversed and remanded for further proceedings in accordance with the views herein expressed.
THOMAS, C.J., TERRELL, THORNAL and O'CONNELL, JJ., STURGIS, District Court Judge, and SAULS, Circuit Judge, concur.
NOTES
[1] Article V, Section 4(2), Constitution of the State of Florida, provides: "The supreme court may directly review by certiorari interlocutory orders or decrees passing upon chancery matters which upon a final decree would be directly appealable to the supreme court." F.A.R. Rule 4.2, 31 F.S.A., provides that appeals from interlocutory orders or decrees in equity may be prosecuted in accordance with this rule. The propriety of an interlocutory appeal instead of certiorari to review the subject order is not raised in this case.
[2] Article V, Section 4, Constitution of the State of Florida, provides for appeals from trial courts directed to this Court from "final judgments or decrees directly passing upon the validity of a state statute or a federal statute or treaty, or construing a controlling provision of the Florida or federal constitution, * * *".
[3] Cramp v. Board of Public Instruction of Orange County, Fla. 1960, 118 So.2d 541, 543.
[4] Borden Company v. Odham et al., Fla. 1959, 121 So.2d 625; Foremost Dairies, Inc. v. Odham et al., Fla. 1959, 121 So.2d 636; National Dairy Products Corporation v. Odham et al., Fla. 1959, 121 So.2d 640.
[5] 1
"Foremost Dairies, Inc., during the months of October and November 1959, purchased milk from its producers that normally would have been delivered to it at its Jacksonville, Florida plant but diverted such milk to its Tallahassee, Florida plant and did not, in computing milk utilization to be allocated to its producers for payment purposes, classify and allocate such milk so diverted according to its final utilization and pay therefor the minimum prices established by the Florida Milk Commission in violation of Order 20-11 and No. NE-8 of the Florida Milk Commission and of Chapter 501, Florida Statutes [F.S.A.].
"Count 2
"Foremost Dairies, Inc., during the month of November 1959, purchased milk from its producers that normally would have been delivered to it at its St. Petersburg, Florida plant but diverted such milk to its Tallahassee, Florida plant and did not, in computing milk utilization to be allocated to its producers for payment purposes, classify and allocate such milk so diverted according to its final utilization and pay therefor the minimum prices established by the Florida Milk Commission in violation of Orders No. 20-11 and No. TB-6 of the Florida Milk Commission and of Chapter 501, Florida Statutes [F.S.A.].
"Count 3
"Foremost Dairies, Inc., during the periods of April 1, 1958 to May 5, 1959 distributed through its Jacksonville, Florida plant milk that was utilized in Class I channels, such milk being disposed of to military installations, without accounting for or taking into consideration such milk for the purpose of determining the number of gallons of milk for which its producers must be paid at the Class I price fixed by the Florida Milk Commission, in violation of Order No. 20-11 of the Florida Milk Commission.
"Count 4
"Foremost Dairies, Inc., has failed to give fair and reasonable effect to the intent of the Legislature that producers receive a fair return for their product in that in its Jacksonville, Florida plant during the period from April 1, 1958 to May 5, 1959 it distributed in and through such plants milk that was utilized in Class I channels disposing of the same to military installations in Florida without accounting for such milk in the volume of milk utilized by it at such plant during such period of time for the purpose of calculating and making payment to its producers in violation of Chapter 501.13(3), Florida Statutes [F.S.A.].
"Count 5
"Foremost Dairies, Inc., on or about October 6 and 7, 1958 refused to permit a deputy administrator of the Florida Milk Commission to inspect, during reasonable hours, its books, papers, records or documents at its office in Tallahassee, Florida, for the purpose of ascertaining facts to enable the Commission to administer Chapter 501, Florida Statutes, in violation of Order No. 20-8 of the Florida Milk Commission and of Chapter 501.07 and Chapter 501.09, Florida Statutes [F.S.A.].
"Count 6
"Foremost Dairies, Inc., on or about January 20, 1959 refused to permit a deputy administrator of the Florida Milk Commission to inspect, during reasonable hours, its books, papers, records or documents at its office in Daytona Beach, Florida, for the purpose of ascertaining facts to enable the Commission to administer Chapter 501, Florida Statutes, in violation of Order No. 20-8 of the Florida Milk Commission and of Chapter 501.07 and Chapter 501.09, Florida Statutes [F.S.A.].
"Count 7
"Foremost Dairies, Inc., on or about October 27 and 28, 1959 refused to permit a deputy administrator of the Florida Milk Commission to inspect, during reasonable hours, its books, papers, records or documents at its office in Jacksonville, Florida, for the purpose of ascertaining facts to enable the Commission to administer Chapter 501, Florida Statutes [F.S.A.], in violation of Order No. 20-8 of the Florida Milk Commission and of Chapter 501.07 and Chapter 501.09, Florida Statutes [F.S.A.].
"Count 8
"Foremost Dairies, Inc., has continued in a course of dealing of such a nature as to satisfy the Commission of its inability or unwillingness properly to conduct the business of receiving or selling milk so that its licenses should be suspended or revoked under and by virtue of Chapter 501.09(3) (e), Florida Statutes [F.S.A.], such course of dealing being evidenced by its failure or refusal to cooperate with the Commission in carrying out and enforcing the requirements of Chapter 501, Florida Statutes [F.S.A.], in its failure or refusal properly to account and make payment for milk purchased from its producers, in its conduct of its business operations so as to fail to give fair and reasonable effect to the intent of the legislature that the producers receive a fair return for their products, in its failure or refusal to keep its books and records open to examination by the Commission, its authorized agents, its deputy administrators or its administrator at reasonable times, in its failure or refusal to consult or cooperate with the Commission in the enforcement of orders whose requirements are either plain and manifest or which at most are susceptible of different interpretations so that reasonableness required consultation with the Commission prior to action by it, in its repeated failure or refusal to comply with orders of the Florida Milk Commission and requirements of Chapter 501, Florida Statutes [F.S.A.], and in its failure to comply with Chapter 501, Florida Statutes [F.S.A.] and rules and orders of the Florida Milk Commission after its license had been revoked and the Commission, in lieu of such revocation, had, at its proposal, imposed fine upon its assurance that it thereafter would comply with the law and the rules and orders of the Commission."
[6] This appeal was taken more than six months after the entry of the order denying the motion to dismiss.
[7] Each of the eighteen assignments of error were directed to the order of June 10th denying the motion for summary final decree appointing the master, fixing the time to take testimony and continuing the injunction in force.
[8] Kislak v. Kreedian, Fla. 1957, 95 So.2d 510, 513, 514; Lopez v. Smith, Fla.App. 1959, 109 So.2d 176, 179; Schupler v. Eastern Mortgage Co., 1948, 160 Fla. 72, 33 So.2d 586, 590; 10 Fla.Jur., Dismissals, etc., Sect. 23 (1955).
[9] Connolly v. Sebeco, Inc., Fla. 1956, 89 So.2d 482, 484:

"The purpose of a motion to dismiss is to ascertain if the plaintiff has alleged a good cause of action. The purpose of a motion for summary judgment is to determine if there be sufficient evidence to justify a trial upon the issues made by the pleadings. They thus serve entirely different functions."
Deauville Operating Corp. v. Town & Beach Pl. Co., Fla.App. 1960, 123 So.2d 353; 2 Fla.Jur., Appeals, Sect. 307 (1955).
[10] Miami Home Milk Producers Ass'n v. Milk Control Board, 1936, 124 Fla. 797, 169 So. 541; Alderman v. Puritan Dairy, 1941, 146 Fla. 345, 1 So.2d 177; Shiver v. Lee, Fla. 1956, 89 So.2d 318.
[11] 1 Fla.Jur., Administrative Law, Section 234 (1955). Riley v. Lawson, 1932, 106 Fla. 521, 143 So. 619.
[12] Davis, Administrative Law (1951), para. 190 contains an excellent dissertation on this subject.
[13] Order of Railway Conductors of America v. Pitney, 1946, 326 U.S. 561, 66 S.Ct. 322, 324, 90 L.Ed. 318. Accord  Ward v. Keenan, 1949, 3 N.J. 298, 70 A.2d 77. Also see Cooper, Administrative Agencies and the Courts, page 316 (1951).
[14] The statute in question provided for review of proceedings of the Hotel Commission by certiorari to the Circuit Court and appeals from such court to the Supreme Court. Review of the Milk Commissioner's actions is available to the Distributor by certiorari. See F.A.R. 4.1, Art. V, Sec. 5(3), Art. V, Sec. 6(3), Florida Constitution.