346 So.2d 562 (1977)
The SCHOOL BOARD OF LEON COUNTY, Florida, Appellant,
v.
Ruth S. MITCHELL, Appellee.
No. EE-64.
District Court of Appeal of Florida, First District.
May 4, 1977.
Rehearing Denied June 22, 1977.
C. Graham Carothers and Michael Pearce Dodson of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for appellant.
Joseph C. Jacobs and Brian S. Duffy of Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, for appellee.
BOYER, Chief Judge.
By this interlocutory appeal, appellant challenges the trial court's denial of its motion to dismiss appellee's complaint and further claims that appellee has failed to exhaust her administrative remedies and that, in any event, her declaratory judgment suit was improperly instituted.
Appellee, employed by appellant on a continuing contract basis as supervisor of guidance and testing, appeared at an April 1, 1975 meeting of appellant and presented argument against the county-wide reorganization *563 plan then being considered to reduce administrative costs. The proposed plan abolished her position and allocated the functions associated therewith to two new positions, coordinator of career guidance and counseling and coordinator of research and evaluation services. Appellant rejected appellee's argument and adopted the proposed reorganization plan by a vote of three to two.
Appellee, pursuant to Section 120.68, Florida Statutes (1975), commenced two actions: By the first,[1] she sought review in this court of an administrative agency rule. That action has been stayed pending the outcome of the second action, which is the subject of this appeal. By the second action, appellee sought in Circuit Court a declaratory judgment as to her rights under Chapter 231, Florida Statutes (1975) and under her continuing contract with appellant, a temporary and permanent injunction to prevent appellant from implementing the reorganization plan, and money damages for breach of contract. The complaint alleged that appellee had exhausted her administrative remedies. Appellant moved to dismiss the declaratory judgment for lack of subject matter jurisdiction. The trial court denied the motion without comment.
Essentially, the motion to dismiss raises two issues: Whether appellee has exhausted her administrative remedies, and, assuming arguendo that administrative remedies have been exhausted, whether the Circuit Court may properly entertain a declaratory judgment action challenging final agency action.
In this opinion, we consider the unanswered question posed in a recent opinion of this court, State ex rel. Department of General Services v. Willis,[2] viz: "the extent to which the `undivested' statutory jurisdiction of Circuit Courts to render declaratory judgments under Chapter 86 is nevertheless to be judicially restricted when coercive relief, not a declaration of some doubtful right or status, is plaintiff's real objective, or when uninvoked administrative remedies are available." Put another way, the central issue in this case is whether, in recognition of the saving clause contained in Section 120.73, Florida Statutes (1975),[3] a plaintiff in this type of proceeding will be permitted to maintain a declaratory judgment action, or whether he (or she) will be limited to his (or her) remedies under the Administrative Procedures Act.
Our task sub judice has been materially facilitated by the Willis opinion which is particularly helpful in its analysis of the evolution of the APA. From that opinion, we learn that the APA in its original form limited declaratory relief to questions of the validity, meaning, or application of any rule (see Section 120.30, Florida Statutes (1973)), that the 1974 version of the APA repealed Section 120.30, and that no section of the 1975 version of the APA, in particular Section 120.73, Florida Statutes (1975), revived Section 120.30. Thus, because there is no existing section within the APA nor the declaratory judgment act detailing the instances in which a rule or order of a state agency may be challenged in a declaratory judgment action, we must resolve that issue by analyzing the nature of the declaratory judgment remedy and by examining the cases construing Chapter 86 in an administrative context (particularly those decided prior to the adoption of the now repealed Section 120.30) in light of the substantial changes which administrative procedure has undergone in Florida.
The primary characteristics of the declaratory judgment action may be gleaned from an examination of Chapter 86 and the cases interpreting that statute. By statute, the Circuit Court is empowered to render declaratory judgments on the existence or non-existence of any immunity, power, privilege, or right, or of any fact concerning said existence or non-existence. In a declaratory *564 judgment action other forms of relief may be requested and, if appropriate, granted. Section 86.011, Florida Statutes (1975). Although not intended to be an exclusive enumeration (see Section 86.051, Florida Statutes (1975)), some of the more common situations in which a declaratory judgment action is proper involve persons who may be in doubt about their rights under a deed, will, contract or other written instrument or are in doubt whether certain rights are affected by statute, regulation made under statutory authority, or by a municipal ordinance, contract, deed, will, franchise, or other written instrument. Section 86.021, Florida Statutes (1975). Chapter 86 is both substantive and remedial, and is to be liberally construed. Section 86.101, Florida Statutes (1975). A declaratory judgment action will not be dismissed on the ground that there is another adequate remedy. Section 86.111, Florida Statutes (1975).
Consistent with the statutory scheme, the courts have variously described the purpose of the act as: To establish a means whereby one might obtain a judicial declaration of rights never before determined (deMarigny v. deMarigny, 43 So.2d 442 (Fla. 1959)), to extend procedural remedies to comprehend relief in cases where technical or social advances have tended to obscure or place in doubt one's rights, immunities, status or privileges (Watson v. Centro Espanol De Tampa, 158 Fla. 796, 30 So.2d 288 (1947)), to relieve litigants of the common-law rule that no declaration of rights may be judicially adjudged unless a right has been violated and to render practical help in ending controversies which have not reached the stage where other legal relief is immediately available (Bell v. Associated Independents, Inc., 143 So.2d 904 (Fla. 2nd DCA 1962)), and to settle and afford relief from insecurity and uncertainty with respect to rights, status and other equitable or legal relations. (Hialeah Race Course, Inc. v. Gulf Stream Park Racing Ass'n., 210 So.2d 750 (Fla. 4th DCA 1968)).
Notwithstanding the above, the courts soon recognized that the scope of the declaratory judgment action was not infinite and that certain restrictions would be imposed upon its use. In fact, the Supreme Court, in a seminal opinion authored by the late Justice Terrell[4] which upheld the constitutionality of Florida's initial declaratory judgment act, recognized the types of situations to which the declaratory judgment act was generally found to be inapposite:
"(1) Where it would serve no useful purpose; (2) where special tribunals have been provided to handle specified controversies; (3) where the facts sought to be litigated were hypothetical, presented a `made case,' or were uncertain of occurrence; (4) the question raised must be real and not theoretical, and the person raising it must have a bona fide interest in it; and (5) there must be a defender with a bona fide right to defend." (Sheldon v. Powell, 128 So. at page 262 (emphasis supplied).
Not long after the Sheldon opinion was authored, actual, as opposed to abstract, limitations on declaratory judgment actions were developed and promulgated by the courts. For example, academic or moot questions will not be decided in a declaratory judgment suit (Ready v. Safeway Rock Co., 157 Fla. 27, 24 So.2d 808 (1946)), nor will a court ordinarily entertain an action for declaratory judgment when a proceeding is already pending between the same parties involving the same issues. (Taylor v. Cooper, 60 So.2d 534 (Fla. 1952)). It has also been held that where the only material issue in a dispute is of a factual nature, an action for declaratory judgment will not lie. (Travelers Indemnity Co. v. Johnson, 201 So.2d 705 (Fla. 1967)).
In the field of administrative law, the battle lines were quickly drawn between those seeking to challenge agency action in reliance upon the generally accepted principle that the declaratory judgment act was to be liberally construed, and those attempting to narrow the declaratory judgment remedy by reference to the doctrines *565 of primary jurisdiction and exhaustion of administrative remedies. As noted by this Court in the Willis opinion a plethora of Florida cases have required judicial deference to administrative remedies. (See State ex rel. Department of General Services v. Willis, supra, at 589, 590) In their consideration of declaratory judgment actions vis a vis the doctrines of primary jurisdiction and exhaustion of administrative remedies, the courts developed a method for determining whether a declaratory judgment action was appropriate in an administrative law context which turned on the characterization of administrative action in any particular case as either quasi-judicial on the one hand or quasi-executive (or quasi-legislative or "purely administrative") on the other hand. In one of the first cases to employ that distinction, albeit in a case involving a different issue (the reviewability of an administrative order), the Florida Supreme Court noted the primary characteristic of a judicial or quasi-judicial agency decision: "... when notice and a hearing are required and the judgment of the board is contingent on the showing made at the hearing, then its judgment becomes judicial or quasi-judicial as distinguished from being purely executive."[5]
Courts soon began prohibiting aggrieved parties from maintaining a declaratory judgment action where the challenged order had been issued as a result of quasi-judicial proceedings. For example, in Frix v. Beck, 104 So.2d 81 (Fla. 3rd DCA 1958), the court initially cited the general rule that where provision is made by law for the decision of a court or tribunal to be reviewed on appeal, and the procedure thus afforded is not availed of, a party adversely affected by such an order may not seek to have it altered or reversed by a suit for declaratory decree. The court concluded, "We see no reason why this rule should not be applied with equal force to orders of an administrative board made in the exercise of its authorized quasi-judicial powers, for which appellate review is provided but not pursued."[6]
The Supreme Court finally considered the propriety of a declaratory judgment action to review an administrative order in Teston v. City of Tampa, 143 So.2d 473 (Fla. 1962),[7] and outlined the procedure to be followed in challenging administrative action. First, if a valid method of review is prescribed in the statute under which the agency operates, then that procedure should be followed. In the absence of a specific statutory method of review, the order must be examined for the determination of whether it is quasi-judicial or quasi-legislative. Referring to DeGroot v. Sheffield, supra, the court defined a "quasi-judicial order" as one which "has been entered pursuant to statutory notice and hearing involving quasi-judicial determinations." If quasi-judicial, the order is reviewable by certiorari. If quasi-legislative, the appropriate remedy would be equity suit and injunction. In the Teston case, the order was found to be quasi-legislative; therefore, the declaratory judgment action was permitted. The court found that there was no other established appellate procedure which plaintiffs could have followed to obtain the determination that they were seeking.
The Third District Court of Appeal utilized the same terminology in holding that a declaratory judgment action was no substitute for established procedure for appeal or review of decisions of judicial tribunals, boards, or administrative officials exercising judicial or quasi-judicial powers.[8]
*566 Even as the courts began taking cognizance of Section 120.30, the quasi-judicial/quasi-legislative distinction was retained. In Meiklejohn v. American Distributors, Inc., 210 So.2d 259 (Fla. 1st DCA 1968), this Court held that Section 120.30 had "no application whatever to an order rendered by the agency in its conduct of a quasi-judicial proceeding which applies only to the issues in that proceeding, and affects only the parties thereto." (See also Pest Control Com'n. of Fla. v. Ace Pest Control, Inc., 214 So.2d 892 (Fla. 1st DCA 1968) and Bay National Bank and Trust Company v. Dickinson, 229 So.2d 302 (Fla. 1st DCA 1969))
We now arrive at the 1974 revision of the APA which, inter alia, repealed Section 120.30. What was the intended effect of the 1974 revision upon the quasi-judicial/quasi-legislative rubric? According to one source:
"This definition [of `agency action'] provides a convenient shorthand expression for all the things which agencies do, whether in adjudication, rule-making or otherwise (for example, in part fact-finding and in part policy-making). It is intended, along with other provisions of the act, to focus attention on rights determined or affected by the activities of agencies, rather than the manner in which the action or inaction can most conveniently be characterized. To this end the provisions of the proposed act will make possible the abolition of all forms of judicial distinction which have been developed relative to agency actions, such as `quasi-executive', `quasi-judicial', `quasi-legislative', and, more recently, `more judicial than quasi-judicial'. * * The new act would save courts * * * the tortuous development and application of terms such as `quasi-executive' and `quasi-judicial'."[9]
At a different juncture, the same source emphasizes:
"As stated, this section [concerning decisions which affect substantial interests] applies whether the matter is adjudicatory in nature or a rule-making proceeding, thus broadening considerably the scope of administrative fairness. For example, the discretionary determinations of many governmental agencies and officers which have been characterized as `quasi-judicial', `quasi-legislative' or `quasi-executive', or have otherwise been exempted from the operation of administrative procedure laws, are now brought under the minimum fairness provisions of the proposed act. To this extent the act is intended to overrule cases making the distinction, such as Bay National Bank and Dickinson v. Judges of the District Court of Appeal, 282 So.2d 168 (Fla. Sup.Ct. 1973)."[10]
This Court acknowledged the thrust of the 1974 revision as applied to review of agency action in Broward County v. Administration Commission, 321 So.2d 605 (Fla. 1st DCA 1975), wherein we, after reviewing the historical background of the quasi-judicial/quasi-legislative labels, stated, "Inasmuch as the new Administrative Procedure Act provides that all proceedings for review of an administrative agency action (except those going to the Supreme Court) shall be instituted by filing a petition in the District Court of Appeal, it appears that such is the method now to be followed regardless of the nature of the administrative action."[11]
The remaining vitality, if any, of the quasi-judicial/quasi-legislative characterizations must be measured against the intricate *567 procedures and guarantees of the latest version of the APA. As noted in the Willis opinion, "The act's impressive arsenal of varied and abundant remedies for administrative error requires judicial freshening of the doctrines of primary jurisdiction and exhaustion of remedies, and greater judicial deference to the legislative scheme. It is not that the power of Circuit Courts has been lessened, nor that their historic writs have been surrendered. Rather, the occasions for their intervention have lessened."
In recognition of the above, we take a fresh look at the terms "quasi-judicial", "quasi-legislative", and "quasi-executive". It is appellee's contention that the reorganization plan adopted by appellant which eliminated her position was a "rule" and was "quasi-executive" because it was adopted without a formal hearing. Therefore, appellee[12] claims that she was entitled to institute a declaratory judgment action to challenge the validity of appellant's reorganization plan. As was previously discussed, however, the distinction between quasi-judicial and quasi-legislative agency action has blurred almost to the point of unintelligibility. That phenomenon was foreseen long before the extensive revisions of the APA which caused it. In Bloomfield v. Mayo, 119 So.2d 417, 421 (Fla. 1st DCA 1960), this Court stated:
"It seems clear from the decision of the Supreme Court [DeGroot v. Sheffield, supra] that the test of a quasi-judicial function turns on whether or not the statutory tribunal had exercised a statutory power given it to make a decision having a judicial character or attribute, and consequent upon some notice or hearing to be had before it as a condition for the rendition of a particular decision made. Where an order of an administrative board or commission is purely administrative or quasi-legislative or quasi-executive in character and quality, such an order is not capable of being reached or affected by the writ of certiorari unless, as an incident to the arriving at or making of such order by the promulgating authority, a notice and hearing, judicial in nature, is required by law to be observed as a condition precedent to the commission's or board's exercise of the administrative, quasi-legislative or quasi-executive power comprehended in the terms of the order it attempts to enunciate. Even so, an administrative, quasi-legislative or quasi-executive order, after it has already been entered, may have a quasi-judicial attribute if capable of being arrived at and provided by law to be declared by the administrative agency after express statutory notice, hearing and consideration of the evidence to be adduced as a basis for the making thereof." (Emphasis added)
And so it has come to pass. The judicial-type hearing applicable to otherwise administrative, quasi-legislative or quasi-executive orders has become a reality by virtue of Section 120.57, Florida Statutes (1975) and its brethren, Section 120.54(3), Florida Statutes (1975)[13] and Section 120.56, Florida Statutes (1975). Those statutes become operative when "the substantial interest of a party are determined by an agency." Examination of the cited statutes indicate that the hearings described therein satisfy the criteria for quasi-judicial agency action.[14] Consequently, agency action, at least insofar as it affects the substantial interests of a party, is, to use the old terminology, quasi-judicial. Under the old line *568 of cases, cited herein, where agency action was found to be quasi-judicial, certiorari was the sole remedy. Applying that rationale and with a view toward the comprehensiveness of the revised APA, we hold that, in the vast majority of cases, the sole method of challenging agency action, whether formally recognized as an "order" or a "rule", as it affects the substantial interests of a party is by petition for review to the appropriate District Court of Appeal.
We are left with the question of the impact of Section 120.73, Florida Statutes (1975), i.e., the savings clause which declared that nothing in Chapter 120 should be construed to divest the Circuit Courts of jurisdiction to render declaratory judgments. In that respect, we are guided by the following words of the Supreme Court:
"Administrative boards and bureaus ... are now permanent fixtures in our government. Such boards and bureaus have been the source of great controversy in recent years and there have undoubtedly been abuses from time to time of the powers which are necessarily vested in them. On the other hand, all modern students of government recognize the fact that, in the complex society in which we live, the orderly administration of the affairs of the people requires such agencies. In those instances where there have been gross or flagrant abuses of power, or where such agencies have attempted to act beyond the powers delegated to them, the courts have unhesitatingly intervened. On the other hand, these agencies have been vested with powers and responsibilities in their field of operation by the legislative branch of the government. The courts have been extremely reluctant to interfere with the actions of such bodies in the proper performance of their duties and responsibilities in the absence of a clear and unmistakably flagrant violation of a constitutional or statutory right of the affected party. Promiscuous intervention by the courts in the affairs of these administrative agencies except for most urgent reasons would inevitably result in the dethronement of the commissions and the substitution of the courts in their place and stead." (Odham v. Foremost Dairies, Inc., 128 So.2d 586, 592-593 (Fla. 1961))
This Court in the Willis decision has also observed "that some agency errors may be so egregious or devastating that the promised administrative remedy is too little or too late", and "that the Administrative Procedure Act does not and cannot displace Circuit Court jurisdiction to enjoin enforcement of facially unconstitutional agency rules."[15] (State ex rel. Department of General Services v. Willis, supra, at 590) Thus, we are not prepared to say that a frustrated litigant involved in the midst of administrative proceedings may never, under any circumstances, obtain a declaratory decree from the Circuit Court, but that the declaratory judgment remedy may be resorted to only in the type of extraordinary cases generally described above.[16]
Sub judice, the rule challenge initiated by appellee based upon the record in this case is not of such character as would justify the intervention of the Circuit Court by a declaratory judgment proceeding. The gravamen of appellee's complaint is that "the Circuit Court declare the subject rule invalid because it violates Subsection 231.36(3)(g), Florida Statutes (1973, as amended *569 1974)."[17] Appellee, as a party whose interests were "substantially affected",[18] could have had that issue decided (as well as the numerous factual issues which appellee claims are pertinent) by hearing held pursuant to Section 120.57(1), Florida Statutes (1975). Under such circumstances a declaratory judgment action will not lie.
Accordingly, holding that petition for review to the District Court of Appeal is the sole method by which review of such agency action may be obtained sub judice, we determine that the Circuit Court should have granted the motion to dismiss.
REVERSED.
RAWLS and SMITH, JJ., concur.
NOTES
[1] Assigned Case No. Y-303 in this court.
[2] 344 So.2d 580 (Fla. 1st DCA 1977).
[3] § 120.73 provides, in pertinent part: "Nothing in this chapter shall be construed ... to divest the circuit courts of jurisdiction to render declaratory judgments under the provisions of chapter 86 ..."
[4] Sheldon v. Powell, 99 Fla. 782, 128 So. 258 (1930).
[5] DeGroot v. Sheffield, 95 So.2d 912, 915 (Fla. 1957).
[6] Frix v. Beck, supra, at 83.
[7] Although § 120.30, Fla. Stat. (1973) providing for a declaratory judgment action to challenge the validity, meaning or application of any rule, had been adopted by the legislature in 1961, the litigation in the Teston case began prior to the passage of § 120.30 which section was never discussed by the court.
[8] City of Miami v. Eldredge, 126 So.2d 169 (Fla. 3rd DCA 1961); Carol City Utilities, Inc. v. Dade County, 143 So.2d 828 (Fla. 3rd DCA 1962), cert. disch., 152 So.2d 462 (Fla. 1963). In the latter case, the Third District noted that certiorari was the sole remedy available, and there was no question of the exhaustion of administrative remedies. Accord, School Board of Flagler County v. Hauser, 293 So.2d 681 (Fla. 1974).
[9] Reporter's Comments on Proposed Administrative Procedure Act for the State of Florida, p. 10 (3/9/74).
[10] Ibid., at 18.
[11] Broward County v. Administration Commission, at 609. Accord, City of Titusville v. Florida Pub. Emp. Rail. Com'n, 330 So.2d 733 (Fla. 1st DCA 1976). Lest we be accused of overstating the holdings in the Broward County and City of Titusville cases, we feel constrained to agree with the appellee that those cases did not pass upon the issue of whether the petition for review was the sole method for challenging agency action.
[12] Citing Jezek v. Vordemaier, 227 So.2d 69 (Fla. 4th DCA 1969).
[13] Now renumbered as § 120.54(16), Fla. Stat. (1976 Supp.).
[14] The hearings envisioned by §§ 120.54 and 120.56 are to be conducted in the manner prescribed in § 120.57 which provides for two types of hearings. Subsection 1 provides for the more extensive hearing where there is a disputed issue of material fact whereas Subsection 2, applied in the absence of a disputed issue of material fact, describes a less elaborate scheme. Nevertheless, even the Subsection 2 hearing requires reasonable notice, an opportunity to present written or oral evidence, and a written explanation by the agency if the objection of the complaining parties are overruled.
[15] This court has recently noted in two cases involving the power of a hearing officer to declare rules invalid that the officer has the authority to declare a proposed rule unconstitutional (Dept. of Environmental Regulation v. Leon County, 344 So.2d 297 (Fla. 1st DCA 1977, Opinion filed April 7, 1977), but has no such power with respect to rules already enacted. Dept. of Adm. v. Stevens, 344 So.2d 290 (Fla. 1st DCA 1977), Case Nos. CC-101 and CC-156, Opinion filed April 6, 1977.
[16] See also, for example, Dept. of Rev. v. University Square, 336 So.2d 371 (Fla. 1st DCA 1976) and Fla. Dept. of Rev. v. Estero Bay Development Corp., 336 So.2d 479 (Fla. 1st DCA 1976), both holding that a taxpayer may petition for declaratory judgment to test the validity of a tax assessment. Note however that the constitution and statutes specifically vest in Circuit Courts jurisdiction in such cases.
[17] That subsection provides as follows: "Any person who has previously earned continuing contract status as a supervisor or principal in the school district shall be continued in that status until such time as the position is discontinued, the person resigns, or his contractual status is changed by mutual agreement or as prescribed below."
[18] We assume for purposes of this opinion that appellee is a "substantially affected party". That determination was never made in the administrative proceedings because appellee did not request a hearing as a "substantially affected party". It would seem that appellee would qualify as a "substantially affected party", given the fact that the proposed agency action (the reorganization plan) eliminated her position which she held under a continuing contract.