361 So.2d 695 (1978)
GULF PINES MEMORIAL PARK, INC., Appellant,
v.
OAKLAWN MEMORIAL PARK, INC., and Gerald A. Lewis, As Comptroller of the State of Florida, Appellees.
No. 52378.
Supreme Court of Florida.
May 25, 1978.
Rehearing Denied September 11, 1978.
*696 Joseph C. Jacobs and Robert J. Angerer of Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, for appellant.
John Radey of Holland & Knight, and S. Craig Kiser, Asst. Gen. Counsel, Tallahassee, for appellees.
ENGLAND, Justice.
This case is before the Court on direct appeal from an order of the Leon County Circuit Court holding a portion of Florida's cemetery licensing statute, Section 559.39(2), Florida Statutes (1977), to be "an invalid delegation of legislative authority and unconstitutional." The effect of that ruling was to declare that the state comptroller, *697 acting in his capacity as the head of the Department of Banking and Finance,[1] proceeded improperly in denying the license application of Oaklawn Memorial Park, Inc. on the basis of failure to demonstrate a need for additional cemetery facilities in the community presently served by Gulf Pines Memorial Park, Inc. and others. We agree that the comptroller's denial of Oaklawn's license request was improperly grounded on the statutory "need" criteria, but our disposition of this controversy renders unnecessary any consideration of the statute's constitutionality.
In September 1975, Oaklawn filed an application with the comptroller, pursuant to Chapter 559, Florida Statutes (1975),[2] seeking authority to establish a new cemetery in Charlotte County. Section 559.39, as it then existed, provided:
"Upon receipt of application for authority under ss. 559.33 and 559.34, the department shall investigate the following:
(1) Character, reputation, financial standing, business qualifications, and motives of the proponents.
(2) The need for a cemetery in the community to be located, giving consideration to the adequacy of existing facilities and the need for further facilities in the area to be served.
(3) The proposed financial structure.
(4) Zoning approval, where applicable, and if zoning is not in effect, the approval and acceptance of a majority of adjacent property owners.
(5) Suitability of property for cemetery use."
We had previously declared the "need" criterion in subsection (2) to be an unconstitutional delegation of legislative authority, Dickinson v. State, 227 So.2d 36 (Fla. 1969), and the comptroller quite properly did not consider that element in his initial review of Oaklawn's application. He found that the proposal met the statutory requirements in all other respects, and in May 1976 issued a notice of intent to grant the requested cemetery license. This notice provided, however, that persons substantially affected by the proposed action could submit objections, and Gulf Pines did file a timely objection with a request for a comptroller's conference.
After the events described above but before the comptroller's conference, the legislature amended Section 559.39, effective June 23, 1976, in order to cure the defect noted in Dickinson, by providing more specific criteria upon which a determination of "need" could be based.[3] Section 559.39(2) was amended to read:
"(2) The need for a cemetery in the community to be located, giving consideration to the adequacy of existing facilities and the need for further facilities in the area to be served, which need may be presumed upon the following criteria being met:
(a) The population; rate of population growth; death rate; ratio of burials to deaths; adequacy of existing facilities; and the solvency of the care and maintenance trust fund of the existing facilities.
(b) In order to promote competition, the department may waive the criteria promulgated in paragraph (a) in order that each county should have at least two cemeteries operated by different licensees."
A comptroller's conference was held on June 29, at which evidence was presented on the issue of "need" for a new cemetery based on criteria in the newly enacted statute.[4] Subsequently, the comptroller denied Oaklawn's license application on the ground *698 that it did not meet the new "need" requirements of Section 559.39(2).[5]
In January 1977, Oaklawn filed an action for declaratory judgment and petition for mandamus in the Leon County Circuit Court, claiming that the comptroller wrongfully applied the provisions of the amended statute retroactively to its license application, and that in any event the statute constitutes an invalid delegation of legislative power in violation of Article III, Section 1 of the Florida Constitution.[6] After Gulf Pines was permitted to intervene, Oaklawan successfully moved for summary judgment. The trial court's final judgment recited
"that Chapter 76-251, Florida Statutes, was improperly applied ... to [Oaklawn's] application .. ., [and] that, even if the statute applied, the statute would be an invalid delegation of legislative authority and unconstitutional."
Gulf Pines now challenges the trial court's ruling on three grounds. First, it is alleged that the circuit court lacked jurisdiction to consider Oaklawn's suit because administrative remedies under Chapter 120, the Administrative Procedure Act, had not been fully exhausted. Appellant basically contends that where administrative remedies are still available to a party adversely affected by agency action,[7] the circuit court's jurisdiction is "correspondingly limited," State ex rel. Department of General Services v. Willis, 344 So.2d 580 (Fla. 1st DCA 1977), and that resort may be had to the declaratory judgment remedy only in extraordinary cases where the administrative remedies would clearly be inadequate. School Board of Leon County v. Mitchell, 346 So.2d 562 (Fla. 1st DCA 1977).[8]
We need not review here in detail the extensive analyses of the relation between the administrative procedure act and the jurisdiction of the circuit courts embodied in the Willis and Mitchell decisions. Section 120.73 states that nothing in the administrative procedure act "shall be construed ... to divest the circuit courts of jurisdiction to render declaratory judgments under the provisions of chapter 86." On the other hand, we have previously observed that if administrative agencies are to function and endure as viable institutions, courts must refrain from "promiscuous intervention" in agency affairs "except for most urgent reasons." Odham v. Foremost Dairies, Inc., 128 So.2d 586, 593 (Fla. *699 1961). The determination of whether the circumstances of a particular controversy warrant judicial intervention, then, is ultimately one of policy rather than power, and it is to that policy question that the First District Court of Appeal has addressed itself in Willis and Mitchell.
Gulf Pines is correct in interpreting those decisions to mean that, as a general proposition, the circuit court should refrain from entertaining declaratory suits except in the most extraordinary cases, where the party seeking to bypass usual administrative channels can demonstrate that no adequate remedy remains available under Chapter 120. One class of exceptional cases was expressly recognized in Willis, however. The First District there acknowledged
"that the Administrative Procedure Act does not and cannot displace circuit court jurisdiction to enjoin enforcement of facially unconstitutional agency rules."[9]
Oaklawn relies on this exception, and although Gulf Pines does not assert that Oaklawn's facial attack on Chapter 76-251 is spurious or frivolous, it nonetheless contends that the circuit court action should have been dismissed because Oaklawn simultaneously sought coercive relief in the form of mandamus, which in effect constitutes a petition for review of agency action properly belonging in the district courts of appeal under Chapter 120. Gulf Pines further suggests that, as a matter of policy, a simple allegation of unconstitutionality should not enable a party adversely affected by agency action to circumvent the administrative process. This contention is easily resolved. Section 86.011(2), Florida Statutes (1975), provides in part that
"Any person seeking a declaratory judgment may also demand ... coercive ... relief in the same action."
Obviously, Oaklawn was entitled to seek mandamus as a remedy ancillary to its request for declaratory relief, and to hold otherwise would contravene not only the plain language of the statute but declarations of the Florida courts[10] and of the legislature[11] to the effect that the declaratory judgment statute should be liberally construed.
In Department of Revenue v. Amrep Corp., 358 So.2d 1343 (Fla. 1978), we recently considered and rejected the suggestion that the presence of a constitutional question should not excuse a failure to exhaust administrative remedies. Although Amrep involved the legality of a tax assessment, over which the circuit courts have by tradition and statute retained exclusive original jurisdiction, the reasons justifying an exercise of circuit court jurisdiction are equally compelling here. For one thing, the question of "need" for a cemetery would never be reached if, as Oaklawn claims, Chapter 76-251 is either unconstitutional or inapplicable. Since the administrative hearing officer lacks jurisdiction to consider constitutional issues, Department of Revenue v. Young American Builders, 330 So.2d 864 (Fla. 1st DCA 1976), it is pointless to require applicants to endure the time and expense of full administrative proceedings to demonstrate "need" before obtaining a judicial determination as to the validity of that statutory prerequisite. For another, the record here shows that Oaklawn did not attempt to avoid administrative remedies, but merely sought to have them delayed in a reasonable effort to seek a judicial declaration of rights that could not be obtained administratively.[12] Thus, while we agree with Gulf Pines that the mere assertion of constitutional questions should not automatically entitle a party to bypass administrative channels, we must conclude that under the circumstances presented here the *700 claim was suitable for circuit court consideration.
Gulf Pines' second challenge to the trial court's ruling is that the court mistakenly found the comptroller's consideration of the new need criteria to be an improper retrospective application of the statute. This issue resolves this litigation and obviates our consideration of the third, and constitutional, point. The plain language of section 559.39, which requires the comptroller to investigate certain matters relating to cemetery license requests "[u]pon receipt of [the] application," means that his consideration is confined to matters enumerated in the statute as it exists when the application is received. No other reading of the statute is consistent with the words used, with a practical operation of the statute, or with common sense. Since Oaklawn filed its request long before the legislature enacted Chapter 76-251, the comptroller could not properly consider any need criterion at all because the legislature had not yet cured the defect declared in Dickinson.[13]
The comptroller improperly applied Chapter 76-251 to Oaklawn's application. The trial court correctly ruled that no "need" criterion could be considered by the comptroller in evaluating Oaklawn's cemetery license request. The judgment entered below is, to that extent, affirmed.
It is so ordered.
OVERTON, C.J., and ADKINS, SUNDBERG and HATCHETT, JJ., concur.
BOYD, J., dissents.
NOTES
[1] § 20.12(1), Fla. Stat. (1975).
[2] See § 559.33(2), Fla. Stat. (1975).
[3] Ch. 76-251, § 5, Laws of Fla.
[4] The transcript of the hearing reflects that Oaklawn's counsel expressed in his opening remarks a belief that the objections raised by opponents of the license application on the basis of the newly enacted "need" provisions "are somewhat outside the scope of the criteria that we're operating under." Oaklawn nonetheless presented evidence going to that issue.
[5] Oaklawn and the comptroller have stipulated that the application's denial "was based solely on the need criterion set out in Chapter 76-251, Florida Statutes." The factual basis for the conclusion that need had not been demonstrated was evidence adduced at the hearing by opponents of the application showing the existence of two cemeteries within a 12-mile radius, each having over 50,000 spaces available, and an additional six cemeteries within a 30-mile radius.
[6] Oaklawn first filed a request for an administrative hearing pursuant to Section 120.57, Florida Statutes (1975), which the comptroller forwarded to the Division of Administrative Hearings in September 1976. That hearing request is now pending, awaiting the outcome of this litigation.
[7] Appellant correctly points out that Oaklawn's alternatives were not limited to the Section 120.57 hearing it had requested. Immediate review of the comptroller's preliminary ruling that Chapter 76-251 was applicable to Oaklawn's license request, as well as review of the final action rejecting the application, could have been sought under Section 120.68(1).
[8] Gulf Pines also cites Jefferson National Bank of Miami Beach v. Lewis, 348 So.2d 348 (Fla. 1st DCA 1977), as representing an "identical situation" in which the First District Court of Appeal ordered a declaratory action in the circuit court dismissed on the authority of Willis and Mitchell "because adequate remedies were and are available under Chapter 120, Florida Statutes (Supp. 1976)." 348 So.2d at 348. Although Lewis did involve a suit seeking declaratory and injunctive relief from an order of the comptroller granting a branch bank application, the per curiam opinion of the First District does not otherwise indicate, and Gulf Pines has not demonstrated, that the basis for the circuit court action in that case was the same as that presented here  a facial attack on the constitutionality of a statute. Absent a showing that the cases are similar in that crucial respect, we are unable to accept Lewis as controlling authority here.
[9] 344 So.2d at 590. This statement was echoed in Mitchell, 346 So.2d at 568.
[10] See, e.g., Sheldon v. Powell, 99 Fla. 782, 128 So. 258 (1930); Trafalgar Developers, Ltd. v. Morley, 305 So.2d 274 (Fla. 3d DCA 1974); Hialeah Race Course, Inc. v. Gulfstream Park Racing Ass'n, 210 So.2d 750 (Fla. 4th DCA 1968).
[11] § 86.101, Fla. Stat. (1975).
[12] See n. 6 above.
[13] The rule is well established that "in the absence of clear legislative expression to the contrary, a law is presumed to operate prospectively." Walker & LaBerge, Inc. v. Halligan, 344 So.2d 239, 241 (Fla. 1977). Nothing in Chapter 76-251 evinces an intent by the legislature to give retroactive effect to Section 559.39(2).