HOBSON, Acting Chief Judge.
Eastern Air Lines, Inc. (Eastern), appeals a final declaratory summary judgment order rendered in favor of the Hillsborough County Aviation Authority (Authority), a *1077 public body corporate charged by law with the ownership and operation of Tampa International Airport (TIA). We affirm.
In 1968 the Authority and Eastern entered into a lease (Eastern Lease) allowing Eastern to occupy and use certain areas of TIA. The Eastern Lease set forth Eastern’s right to operate a private passenger waiting lounge, known as the Ionosphere Club. The Eastern Lease did not require Eastern to pay the Authority any concession fees.
At the time the Eastern Lease was executed, the Florida Beverage Law, sections 561.01, et seq., Florida Statutes (1967), did not permit airline companies to sell alcoholic beverages in their passenger waiting lounges at airport terminal buildings. In 1981, however, the legislature amended section 565.02(3)(a), see chapter 81-158, section 22, Laws of Florida (1981), thereby enabling an airline company to sell alcoholic beverages in its passenger waiting lounge if it satisfied the following relevant criteria:
Operators of ... airlines engaged in interstate or foreign commerce ... may obtain licenses to sell the beverages mentioned in the Beverage Law ... on payment of an annual license tax ..., and in no more than one passenger waiting lounge licensed by the division and operated by an airline licensed herein at each of its terminals in the state ... provided such licensed airline shall have first obtained an appropriate space lease or permit providing for payment of nondiscriminatory rental and concession fees and filed a tariff for such lounge with the Civil Aeronautics Board, and on payment of an additional license tax ... per lounge ....
Section 565.02(3)(a). (Emphasis added.)
Pursuant to the amended Beverage Law, Eastern filed an application for a license with the Division of Alcoholic Beverages and Tobacco of the Department of Business Regulation of the State of Florida (DABT). Thereafter, DABT issued Eastern a license to sell alcoholic beverages at TIA from October 1, 1981, until September 30, 1982. Eastern s license, which was renewed for another year effective October 1, 1982, stated in part:
This license/permit authorizes the holder to conduct the defined business at the location imprinted hereon pursuant to applicable laws and administrative rules of the State of Florida.
(Emphasis added.)
The Authority notified Eastern that it would not permit the sale of alcoholic beverages at the Ionosphere Club because, in its opinion, the Eastern Lease did not permit such sale. Nevertheless, having been granted a license by DABT, Eastern commenced with such sale.
Several days later, Host International, Inc. (Host) filed a complaint against Eastern and the Authority seeking declaratory and injunctive relief. In 1969 Host and the Authority had signed a lease (Host Lease) permitting Host to occupy and use certain areas of TIA. The Host Lease made Host the main concessionaire for food and beverages at TIA. Unlike the Eastern Lease, the Host Lease required Host to pay concession fees to the Authority. In its suit, Host' claimed under its lease the exclusive right to sell alcoholic beverages at TIA. It also asserted that Eastern’s sale of alcoholic beverages in the Ionosphere Club violated both its lease and the Eastern Lease.
The Authority promptly filed a cross-claim for declaratory relief against Eastern, alleging that Eastern did not possess “an appropriate space lease or permit providing for payment of nondiscriminatory rental and concession fees,” as required by section 565.02(3)(a). It thus requested a declaration by the court regarding the application to the Eastern Lease of the above criterion set forth in section 565.02(3)(a). Subsequently, it filed a motion for a final declaratory summary judgment order on the erossclaim. The court thereafter rendered a final declaratory summary judgment order which “declared to be unlawful” Eastern’s sale of alcoholic beverages in the Ionosphere Club.
*1078 On appeal, Eastern raises several arguments. Its first two contentions may be combined to say that DABT has the exclusive authority to suspend or revoke a license, and that, accordingly, in light of the doctrine of exhaustion of administrative remedies, by instituting a declaratory judgment action in the circuit court seeking to, in effect, revoke or suspend Eastern’s license, the Authority challenged in an “improper forum” the correctness of DABT’s decision to issue Eastern a license. The Authority responds that the “jurisdiction” of DABT is not exclusive in this matter. It points out that section 562.46 of the Beverage Law states:
Legal remedies not impaired. — It is the declared legislative intention that no provision or provisions of the Beverage Law shall in any manner limit, modify, or preclude any person from instituting legal proceedings in courts of competent jurisdiction for the adjudication of any rights that such person may have under the Federal and State Constitutions and under laws now existing, or laws which may be hereinafter enacted.
The Authority submits that section 562.46 “dovetails” with section 120.73 of the Administrative Procedure Act, sections 120.50, et seq., Florida Statutes (1981). Section 120.73 reads:
Circuit Court Proceedings; Declaratory Judgments. — Nothing in this chapter shall be construed to repeal any provision of the Florida Statutes which grants the right to a proceeding in the circuit court in lieu of an administrative hearing or to divest the circuit courts of jurisdiction to render declaratory judgments under the provisions of chapter 86.
In the Authority’s view, chapter 86 provides a “tailor-made remedy” for the dilemma in which it finds itself in the case at bar. Section 86.021 states that a circuit court may render a declaratory judgment regarding how a party’s rights, status, or other equitable or legal relations are affected by a statute. Also, section 86.011 provides that a circuit court may file a declaratory judgment concerning the existence or nonexistence of any fact upon which the existence or nonexistence of a privilege does or may depend.
A review of relevant portions of the Beverage Law shows that DABT possesses the authority to issue, revoke and suspend a license for the sale of alcoholic beverages. Section 561.18 of the Beverage Law authorizes DABT to investigate the qualifications of an applicant and the location sought to be licensed. Upon completion of its investigation, DABT is obligated by section 561.19 to approve or disapprove of the application. See Dade County v. Overstreet, 59 So.2d 862, 865 (Fla.1952). Consistent with sections 561.18 and 561.19, section 561.29(1) empowers DABT to suspend or revoke a license.
Given that issuance of a license by DABT is contingent upon the applicant’s having “first obtained an appropriate space lease or permit providing for payment of nondiscriminatory rental and concession fees,” see section 565.02(3)(a) (emphasis added), it necessarily follows that, before issuing Eastern the license, DABT assumed or determined that Eastern possessed “an appropriate space lease or permit providing for payment of nondiscriminatory rental and concession fees.” DABT made such an assumption or determination without ever having notified the Authority about Eastern’s application for a license, despite the express requirement in section 120.60(2) of the APA that, when an application for a license is made, the agency in question “shall conduct the proceedings required ... with due regard to the rights and privileges of all affected parties .... ”
Ordinarily, a party adversely affected by DABT’s decision to issue a license files a timely petition with the appropriate district court of appeal for review of such final agency action. See § 120.68. However, in light of the fact that the Authority was never notified of Eastern’s application for a license, it is quite understandable that the Authority did not resort to judicial review in a district court of appeal when DABT issued Eastern the license.
Still, as a general rule, it is improper to seek judicial relief before an available, adequate administrative remedy has *1079 been exhausted. See, e.g., Gulf Pines Memorial Park, Inc. v. Oaklawn Memorial Park, Inc., 361 So.2d 695 (Fla.1978); Odham v. Foremost Dairies, Inc., 128 So.2d 586 (Fla.1961). As Eastern points out, section 120.565 of the APA affords the Authority an alternative remedy. Section 120.565 reads in pertinent part:
Declaratory Statement by Agencies. —Each agency shall provide by rule the procedure for the filing and prompt disposition of petitions for declaratory statements. A declaratory statement shall set out the agency’s opinion as to the applicability of a specified statutory provision or of any rule or order of the agency as it applies to the petitioner in his particular set of circumstances only. The agency shall give notice of each petition and its disposition in the Florida Administrative Weekly, ... and transmit copies of each petition and its disposition to the committee. Agency disposition of petitions shall be final agency action.
However, the doctrine of exhaustion of administrative remedies, to reiterate, is a general rule, not an absolute one. Kenneth Culp Davis, a renowned authority on the subject of administrative law, has accurately remarked: “The law embodied in [case] holdings clearly is that sometimes exhaustion is required and sometimes not.” Davis, 3 Administrative Law Treatise § 20.-01 (1958). Indeed, commented our state supreme court in Gulf Pines Memorial Park, Inc.:
[AJs a general proposition, the circuit court should refrain from entertaining declaratory suits except in the most extraordinary cases, where the party seeking to bypass usual administrative channels can demonstrate that no adequate remedy remains available under Chapter 120.
361 So.2d at 699. (Emphasis added.)
In the case at bar, at least several factors compel abstaining from applying the doctrine. As mentioned previously, when Eastern submitted its application for a license, DABT, contrary to the mandatory language of section 120.60(2) of the APA, never afforded the Authority, an affected party, an opportunity to contest whether Eastern possessed “an appropriate space lease or permit providing for payment of nondiscriminatory rental and concession fees.” Moreover, forcing the Authority to resort to an administrative proceeding pursuant to section 120.565 during the ongoing proceeding in the circuit court between Eastern, the Authority, and a third party, Host, instead of allowing the Authority to seek a declaratory judgment in the same court pursuant to section 562.-46 of the Beverage Law, section 120.73 of the APA and sections 86.011 and 86.021 of the Declaratory Judgment Act, would be, to say the least, an expensive, inefficient and awkward proposition for all involved. Cf. Davis, 4 Administrative Law Treatise § 26:1 (1983). Lastly, resolution of the question of whether Eastern possesses an “appropriate space lease or permit providing for payment of nondiscriminatory rental and concession fees” does not call for the exercise of DABT’s administrative expertise.
Eastern’s final argument on appeal is without merit.
Accordingly, we AFFIRM the final declaratory summary judgment order.
DANAHY and SCHOONOVER, JJ., concur.