366 So.2d 469 (1979)
STATE of Florida, DEPARTMENT OF AGRICULTURE AND CONSUMER SERVICES, Division of Animal Industry, Appellant,
v.
Marjorie DENMARK, Ansel A. Wittenstein, Etc., et al., Appellee.
No. 77-1721.
District Court of Appeal of Florida, Fourth District.
January 3, 1979.
Rehearing Denied February 8, 1979.
Robert A. Chastain, Dept. of Agriculture and Consumer Services, Tallahassee, for appellant.
Ellis Rubin, Law Offices of Ellis Rubin, Miami, for appellee.
Dan Chappell, Florida Thoroughbred Breeders' Ass'n, Miami, amicus curiae.
DAUKSCH, Judge.
The trial court enjoined the appellant from enforcing certain of its regulations against appellees and their horses. These regulations have to do with the detection, identification and quarantine of horses which show a positive reaction to the Coggins Test for Equine Infectious Anemia (EIA). This test is also known as the Agar Gel Immunodiffusion Blood Test (AGID) and its purpose is to determine whether the tested animal has EIA. The trial judge determined from the testimony of expert witnesses that the test does not show the presence of EIA but merely the presence of antibodies in the bloodstream. It is the position of the appellant that the antibodies are only present in those horses which are infected with the deadly EIA virus.
This all began with the enactment of Section 585.671, Florida Statutes, (1975). *470 The statute was from an act of the legislature in 1963.[1]
It is obvious from the preamble to the act the legislature deems EIA, also called Swamp Fever, to be a threat to the horse industry and economy of the State.
It is within the police power of the State to enact laws to prevent the spread of infectious or contagious diseases. Conner v. Carlton, 223 So.2d 324 (Fla. 1969), app. dismissed, 396 U.S. 272, 90 S.Ct. 481, 24 L.Ed.2d 417 (1969), reh. denied, 397 U.S. 929, 90 S.Ct. 900, 25 L.Ed.2d 110 (1970); Campoamor v. State Live Stock Sanitary Board, 136 Fla. 451, 182 So. 277 (1938).
The legislature may delegate rule making authority to an administrative board to assure the complete will of the people is carried out. Campoamor v. State Live Stock Sanitary Board, supra.
In fact, it would be an endless, and nigh impossible, task for the legislature itself to see to each and every necessary regulation which is formulated to implement and administer the laws passed. Therein lies the purpose and authority of the legislature and the executive.
The question on appeal is whether the court has the authority in this case to examine the foregoing process of attempting to control swamp fever and determine its validity. That is, was it proper for the trial judge to take evidence in a contested hearing and from that evidence find that the AGID test shows only the presence of antibodies and not the presence of the disease and then declare "the rules and regulations do not have a reasonable basis in fact; thus, said rules are not a reasonable exercise of administrative discretion."
Without reciting all of the evidence suffice it to say there was definite conflict among the witnesses as to the interpretation to be given a positive reaction to the AGID test. Some of the evidence supported *471 the trial judge who found the test merely showed the presence of the antibodies in the blood of the tested horse but did not show the presence of the virus. Other evidence showed the antibodies to be specific to EIA and the appellant determined this to conclusively show the presence of the disease. The appellant offered evidence that the United States Department of Agriculture and at least forty other states officially recognize the AGID test as an identifier of EIA. Finally, the appellant offered evidence to show the horse industry, through racing, provides economic benefit to the State and the disease would adversely affect that economic benefit if left uncontrolled.
It is not within the province of the court to interfere with the judgment of the legislature and its properly delegated authority, absent a clear showing that the subject of the statutory enactments was outside the power of the legislature, or that the rules and regulations promulgated under the statutes were arbitrary or unreasonable or not consistent with the mandate of the legislature. Askew v. Cross Key Waterways & Askew v. Postal Colony Co., Inc., (Fla. S.Ct. Cases No. 52,251 and 52,252, Opinion filed November 22, 1978); Conner v. Carlton, supra.
REVERSED.
DOWNEY, C.J., concurs.
ANSTEAD, J., concurs specially with opinion.
ANSTEAD, Judge, specially concurring:
I concur in the majority's conclusion that the regulations enacted by the Department of Agriculture are valid. The trial court found that the regulations:
cannot be supported upon any rational basis of fact and that there is no factual basis for such rule and regulation.
Among the witnesses presented was Dr. Leroy Coggins, who devised the Coggins test for detecting the disease. He specifically testified that the test reveals the presence of the disease. In addition, the trial court, in effect, rewrote the regulations by providing that appellees' horses would be conclusively presumed to be free of equine infectious anemia if appellees secured a veterinarian's statement to that effect. The Florida Supreme Court has stated:
An examination of the many authorities of texts on this question reveals a consistent attitude of the courts that judicial intervention with administrative action is justified only in those instances where the invalidity of the administrative act is not subject to reasonable differences of opinion.

Odham v. Foremost Dairies, Inc., 128 So.2d 586, 593 (Fla. 1961).
Under current Florida law I am not even certain that the appellees had the right to proceed in a declaratory judgment proceeding when an administrative remedy was also available. School Board of Leon County v. Mitchell, 346 So.2d 562 (Fla. 1st DCA 1977).
NOTES
[1] 63-422
Senate Bill No. 760
AN ACT authorizing a program for the control and eradication of infectious anemia and piroplasmosis of horses in Florida; prescribing the duties of the commissioner of agriculture; providing for the making of rules and regulations and employment of personnel to carry out the purposes of the law; providing for the conduct of research for the purpose of developing and effectuating improved methods of diagnosis, control and eradication; making an appropriation and providing for an effective date.
WHEREAS, the diseases infectious anemia (swamp fever) and piroplasmosis (tick fever) of horses have been diagnosed in Florida at an alarming rate during the past year; and
WHEREAS, the detection of equine piroplasmosis in Dade County, Florida, in September, 1961, represents the first time that this foreign disease has ever been found within the United States; and
WHEREAS, more than one hundred thirty cases of piroplasmosis, a form of infectious anemia, have been diagnosed in Dade, Broward, Palm Beach, Hillsborough and Orange counties since this date; and
WHEREAS, infectious anemia and piroplasmosis of horses are of such nature that horses which do recover remain as carrier animals for an indefinite period, and as such pose a threat to other horses exposed to them; and
WHEREAS, little information has been developed concerning the diagnosis, cure and prevention of these diseases; and
WHEREAS, the existence of these diseases poses a threat to Florida's equine industry, which includes the breeding and racing of thoroughbred and quarter horses within the state, and represents a deterrent to owners of horses outside Florida who wish to race in this state;
NOW, THEREFORE,
Be It Enacted by the Legislature of the State of Florida:
Section 1. The Commissioner of Agriculture shall formulate a program and promulgate all rules and regulations necessary for the successful implementation and administration of a comprehensive program for the control and eradication of infectious anemia and piroplasmosis within this state, and for the conduct of research and experimentation incidental thereto.
Section 2. In the discharge of this duty, the commissioner shall have the power:
(a) To employ such persons and to make such contracts as are necessary to carry out the purpose of this law.
(b) To negotiate with officials of institutions of research and to make such contracts as are necessary for the conduct of research for the purpose of developing and effectuating improved methods of diagnosis, control and eradication of infectious anemia and piroplasmosis. Toward this end he may employ such competent guidance as he deems necessary in negotiating said contracts.