417 So.2d 1055 (1982)
UNITED FACULTY OF FLORIDA, LOCAL 1847, Appellant,
v.
BOARD OF REGENTS, STATE UNIVERSITY SYSTEM, Appellee.
No. AH-110.
District Court of Appeal of Florida, First District.
July 27, 1982.
*1056 Steven A. Been, Tallahassee, for appellant.
Caesar J. Naples, Tallahassee, for appellee.
WIGGINTON, Judge.
This appeal is from a Public Employees Relations Commission (PERC) order vacating the certification of United Faculty of Florida, Local 1847 (UFF) as the bargaining agent for, among others, "graduate assistants" employed by the State University System at the University of Florida and the University of South Florida. UFF challenges the constitutionality of Chapter 81-305, Laws of Florida, now codified as Section 447.203(3)(i), Florida Statutes (1981) as a denial of the right to bargain collectively and the right to equal protection, both guaranteed by the Florida Constitution.
This appears to be a case of first impression in our state and merits comment on both the historical background of the challenged statute, and the prior proceedings before PERC and this Court which led to the certifications vacated below. In 1968, the voters of Florida ratified revisions to the Florida Constitution including collective bargaining rights for public employees as provided in Article I, Section 6:
Right to Work.  The right of persons to work shall not be denied or abridged on account of membership or nonmembeship in any labor union or labor organization. The right of employees, by and through a labor organization, to bargain collectively shall not be denied or abridged. Public employees shall not have the right to strike.
The people selected the notion of collective bargaining. This must be received as a constitutional right guaranteed to all of our citizenry except where there is a strong showing of a rational basis for abridgment which is justified by a compelling state interest. See City of Tallahassee v. Public Employees Relations Commission, 393 So.2d 1147 (Fla. 1st DCA 1981). In 1974, the legislature enacted Chapter 447, Part II, excluding a number of employee groups from the definition of "public employee," with no mention of graduate assistants. § 447.203(3), Fla. Stat. (1974).
In 1976, as the labor organization process continued to mature and bargaining units solidified into compatible groupings, UFF filed a petition seeking to represent graduate *1057 assistants. PERC ruled that graduate assistants were public employees within the meaning of Chapter 447, and that the prohibition against solicitation of students in Section 447.501(2)(f), Florida Statutes (1975) did not prevent graduate assistants from organizing. UFF v. Board of Regents, 3 FPER 304 (1977). This Court affirmed. Board of Regents v. PERC, 368 So.2d 641 (Fla. 1st DCA 1979), cert. denied, 379 So.2d 202 (Fla. 1979). PERC directed elections to be held among graduate assistants at three of the state's universities and UFF prevailed at the University of Florida and the University of South Florida. UFF was certified as the bargaining agent for units of graduate assistants at those two schools. UFF v. Board of Regents, PERC Case No. 8H-RC 765-0131 (June 18, 1980).
The 1980 legislature passed House Bill 7-D which included a provision excluding graduate assistants from the definition of "public employee." However, the bill never became law because it was vetoed by the governor.
The exclusion of graduate assistants from the definition of "public employee" was revisited and passed in the 1981 session becoming Chapter 81-305, Laws of Florida, and codified as Section 447.203(3)(g), (h), and (i), Florida Statutes (1981).[1]
Chapter 81-305 became law in July, 1981, and on August 10, 1981, PERC issued an order to show cause why UFF's certification as bargaining agent for graduate assistants should not be vacated. On September 24, 1981, PERC issued its order concluding that "although prior to the enactment of Chapter 81-305, Laws of Florida, the commission determined that graduate students were public employees, in this situation we are now bound to enforce the law as revised by the legislature." Accordingly, PERC vacated the certification and this appeal was taken from that order.
The statute under scrutiny is artfully drawn and abundantly clear in its definitional exclusion of graduate assistants as public employees. We find the legislature painstakingly enunciated its logic and reasons for exempting the enumerated categories of persons who may otherwise have been deemed public employees.[2] However, *1058 in the legislature's apparent haste to amend the bill to include the graduate assistant exclusion, its sponsors failed to declare the legislative intent applicable to this exclusion, thus giving no guidance or assistance to the issue sub judice.
Appellant contends that graduate assistants are employees within the meaning of Article I, Section 6 of the Florida Constitution. As there was no testimony given before PERC at the show cause hearing, reversion is made by the parties to findings of PERC at its 1977 hearing wherein the Commission observed that:
It cannot be doubted that graduate assistants are "students in institutions of higher learning," they are all university students pursuing advanced degrees. But that is not all they are. They all perform work for the various universities operated by the board, their work is of benefit to the universities for which it is performed, the work is performed subject to the supervision and control of professors who are employees of the several universities, and the work is performed in exchange for the payment of money by the board to the graduate assistants who perform the work. A more classic example of an employer-employee relationship can hardly be imagined.
UFF v. Board of Regents, supra, at 305.
Thus, the Commission in its initial certification hearing concluded that graduate assistants were not only employees within the purview of Article I, Section 6 of the Florida Constitution, they were also, in the absence of a specific statutory exception, "public employees" within the meaning of Section 447.203(3), Florida Statutes (1977) and entitled to all of the rights afforded other public employees under Chapter 447, Part II, Florida Statutes.
PERC's original analysis and definition of an employee is similar to that given by the supreme court in City of Boca Raton v. Mattef, 91 So.2d 644 (Fla. 1956). In Mattef, the court, while considering the standard of care owed a worker who fell from a city water tower, held:
An employee is one who for a consideration agrees to work subject to the orders and direction of another, usually for regular wages but not necessarily so, and, further, agrees to subject himself at all times during the period of service to the lawful orders and directions of the other in respect to the work to be done.
At 647.
Appellee submits that a graduate assistant is more student than employee. We reject that argument for the following reasons: The record reflects that graduate assistants work under the orders and directions of a supervising faculty member, for regular pay. Although work assignments are generally in the assistant's academic area, they are made according to the needs and interests of the employing department and may be totally unrelated to the assistant's field of interest. State universities hire graduate assistants to supplement the faculty, relieving regular faculty work load and allowing the universities to offer a wider variety of classes and reduce class size. While the work may be viewed as an extension of the educational process *1059 designed to enrich the assistants' academic and professional capabilities, their duties may also be viewed as part-time work performed for the university in order to support themselves and their families while completing their degree. Graduate assistants' duties do not usually fulfill any degree-related requirements, and assistants do not receive academic credit for performing such duties. The primary beneficiaries of the services performed by the graduate assistants are the faculty members whom they assist, and the university itself, while the graduate assistants are beneficiaries of a paycheck. This looks like employment.
This situation is not unlike the issue posed in Department of Revenue v. Florida Boaters Association, Inc., 409 So.2d 17 (Fla. 1981), wherein the Florida Supreme Court rejected the legislature's attempted exclusion from the definition of "boat" as those boats "used principally as a residence" thereby removing their constitutional exemption from ad valorem taxes. In rejecting the legislature's newly-defined classification as contrary to the meaning of the constitution, the court stated that a boat remains a boat even if it is used primarily as a home.
Similarly, a person who works as an employee remains an employee even if his principal focus is on obtaining an education rather than on earning a full living.
The numerous National Labor Relations Board cases cited by both parties are of general interest but are not decisively applicable. Many of those decisions found student workers not to be employees because as a matter of policy the NLRB desired to preclude the students from collectively bargaining. However, we find that collective bargaining rights in federal law are not based on a constitutional guarantee and thus the status may be denied on the basis of policy. See Physicians National House Staff Association v. Fanning, 642 F.2d 492, 497 (D.C. Cir.1980), cert. denied, 450 U.S. 917, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981); and St. Clare's Hospital, 229 NLRB 1000, 95 LRRM 1180 (1977).[3] In Florida, Article I, Section 6 of the Constitution prevents the legislature from denying employee status to persons who are in fact employees unless the state can demonstrate a compelling interest justifying that abridgment. See City of Tallahassee v. PERC, supra. In short, the pervading issue here is not whether UFF has attempted to raise graduate assistants to the level of collective bargaining  they attained that right in 1968  but instead, whether they are to be deprived of that right.
We must therefore consider whether there is a compelling state interest that would permit such an abridgment and thereby deny the graduate assistants collective bargaining rights. The legislative history and floor debate surrounding Chapter 81-305 reveal two primary reasons for its enactment: (1) the inappropriateness of bargaining with employees who are already receiving a subsidy, i.e., education at a state university; and (2) the danger that costs would go up, through their higher compensation to graduate assistants, if unionization were allowed. We are not persuaded that these reasons justify an abridgment of graduate assistants' constitutional rights.
Appellee reiterates the fear expressed in St. Clare's Hospital that if collective bargaining were injected into the student-teacher relationship, then the emphasis would shift from quality education to economic concerns that would prove detrimental to both labor and education. We find this to be unconvincing because the Board of Regents must walk this narrow path in its present bargaining with other university system units while it strives for excellence in education for our state. The goal is, of course, to raise the quality of the educators and those being educated. Because, in Florida, public employees are prohibited *1060 from striking, the universities need not accept bargaining proposals that are inconsistent with quality education.
Appellee asserts that Section 447.501(2)(f) (1981) makes it an unfair labor practice for a union to involve students in institutions of higher learning in union activity. This urging was dealt with and dismissed as being without merit in UFF v. Board of Regents, 3 FPER 304 (1977) when it held:
The clear purpose and intent of Section 447.501(2)(f) is to prohibit employee organizations, and those acting on their behalf, from seeking student support for union activities. The most obvious evil to be prevented by the statute is the exploitation of students by their teachers, or representatives of their teachers, who might otherwise take advantage of the dependent nature of the students' posture in the student-teacher relationship in order to coerce from the students as unwilling pawns in organizational activities in which the students have no economic interest.
No such exploitation is present here. The Union is not seeking the support of students in the advancement of someone else's economic interests. The Union here is soliciting employees, who also happen to be students, to support the Union's activities on behalf of the same employees whose support is solicited. The economic interests in question are the economic interests of the very people who are the subject of the solicitation. Whether such solicitation be desirable or undesirable, it does not transgress the prohibition of Section 447.501(2)(f).
At 306.
The Board of Regents argues that the Florida legislature has previously shown an intent to exclude graduate assistants as employees in precluding unemployment compensation benefits to graduate assistants [Section 443.036(17)(n)(9)(b), Florida Statutes (1981)]; and from eligibility for membership in the state retirement system. § 216.011(1)(o), Fla. Stat. (1981). Another reason advanced for excluding students employed by the educational institution in a capacity unrelated to their studies as being public employees is because their employment is of brief duration.
We reject that reasoning. These legislative and administrative concerns may be addressed as part of the collective bargaining process. Despite the legislature's preference not to bargain with graduate assistants who receive the benefits of state supported education, such an attitude does not justify abridgment of this constitutional right. The graduate assistants' length of employment, hours and conditions of work, extent of the state's supplementing their tuition, waiver of fees, contributions to social security, membership in the state retirement plan, accrual of vacation and sick leave and the many other privileges and prerequisites of state employment may all be considered and balanced at the negotiating table.
In City of Tallahassee v. Public Employees Relations Commission, 410 So.2d 487 (Fla. 1981), the supreme court found retirement benefits were a part of the collective bargaining process and that the state had failed to demonstrate an interest justifying the legislature's exclusion of retirement as a subject of bargaining, despite the city's fears that excessive concessions could bankrupt the pension fund, in violation of the constitutional provision requiring pension funds to be actuarily sound. The court said:
This argument forgets that the state need not agree to any proposal for retirement benefits or the like which is actuarily unsound. All that it must do under our interpretation of Article I, Section 6, is negotiate on the subject.
At 491.
Similarly, we cannot agree with the Board of Regents that it should be protected from bargaining because it might agree to pay more than it should. It is already experiencing similar if not identical issues in dealing with collective bargaining for university system faculty members who are unionized. We agree with UFF that if concern about higher costs were sufficient reason, collective bargaining rights could be *1061 denied to every employee and the guarantee of Article I, Section 6, would be eliminated altogether. The legislature's goal of limiting costs does not justify singling out any particular group of employees, such as these, and denying collective bargaining rights to that group. Other, and more compelling state interests must be advanced and demonstrated.
We hold that "graduate assistants" are employees within the normal and ordinary meaning of the word and that the inclusion of that category within Section 447.203(3)(i), Florida Statutes (1981) unconstitutionally denies graduate assistants the right to collectively bargain as guaranteed to all public employees by Article I, Section 6 of the Florida Constitution. We do not address whether the other groups listed in Section 447.203(3)(i) may be excluded from the right to collectively bargain, because the parties have limited their arguments to "graduate assistants" and have not presented us with record evidence from which we could determine their status as "employees" under Article I, Section 6.
Accordingly, the term "graduate assistants" in Section 447.203(3)(i), Florida Statutes (1981) is hereby deleted. State ex rel. Boyd v. Green, 355 So.2d 789, 794 (Fla. 1978). PERC's order vacating certifications is hereby reversed to the extent that it affected the certification of UFF as bargaining agent for graduate assistants.
JOANOS, J., and OWEN, WILLIAM C., Jr., (Retired), Associate Judge, concur.
NOTES
[1] 447.203 Definitions

As used in this part:
* * * * * *
(3) "Public employee" means any person employed by a public employer except:
(g) Those persons appointed to inspection positions in federal/state fruit and vegetable inspection service whose conditions of appointment are affected by the following:
1. Federal license requirement.
2. Federal autonomy regarding investigation and disciplining of appointees.
3. Frequent transfers due to harvesting conditions.
(h) Those persons employed by the Public Employees Relations Commission.
(i) Those persons enrolled as graduate students in the State University System employed as graduate assistants, graduate teaching assistants, graduate teaching associates, graduate research assistants, or graduate research associates and those persons enrolled as undergraduate students in the State University system who perform part time work for the State University System.
[2] Be It Enacted by the Legislature of the State of Florida:

Section 1. Legislative Intent
It is the intent of the Legislature to exempt, by the provisions of s. 447.203(3)(g), Florida Statutes, fruit and vegetable inspection service appointees and by the provisions of 447.203(3)(h), Florida Statutes, persons employed by the Florida Public Relations Commission from the provisions of chapter 447, Florida Statutes, because:
(1) All fruit and vegetable inspection appointees are required by the Federal Government to be licensed to inspect fruits and vegetables at the shipping point and the Federal Government retains the authority to revoke an inspection appointee's license at its discretion; this authority is a part of the Federal/State Inspection Agreement entered into between the United States Department of Agriculture and the Florida Department of Agriculture and Consumer Services; an appointment may be terminated by actions beyond the boundaries of Florida while the appointee is assigned work in another state; and once the federal license is revoked, the appointment must be terminated and Florida may not reappoint unless the license is reinstated by the United States Department of Agriculture.
(2) The Legislature finds that each federal/state inspection appointee is subject to personnel investigation and disciplinary action by the United States Department of Agriculture that is completely separate from the provisions of chapter 110, Florida Statutes, and rules of the Florida Career Service System or any negotiated contract.
(3) The legislature finds that the fruit and vegetable inspection appointees are unlike employees in the public service with respect to transfer requirements for the incumbents in the positions; and, since inspection appointees are not certified and licensed to inspect all commodities, it is imperative that an adequate number of certified inspection appointees be available for the appropriate commodity when the crop is ready for harvesting and processing and the only way this condition can be met is for the inspection appointee to agree to accept a transfer as required.
(4) The Legislature finds that Florida's agricultural potential is seasonal and that its inspection demands do not require a year-round work force.
(5) The Legislature finds that unlike other public employees, employees of the Public Employees Relations Commission have an inherent irreconcilable conflict of interest because any employee organization certified to represent employees of the Public Employees Relations Commission would be subject to the Commission's regulatory jurisdiction.
[3] Appellee relies heavily upon the NLRB decision in St. Clare's Hospital. That decision, denying employee status to all persons who worked for the institution in which they were also enrolled as students, dealt with students whose work either was required for a degree or because they received academic credit for what they did. Appellee's reliance is misplaced as those circumstances are not presented by the record in this case.