585 So.2d 991 (1991)
The UNITED FACULTY OF FLORIDA and Robert Hogner, Individually, Appellants,
v.
The FLORIDA BOARD OF REGENTS and Jim Sloan, Donna Poole, and Michael Mattimore, As Commissioners of the Florida Public Employees Relations Commission, Appellees.
No. 88-2692.
District Court of Appeal of Florida, First District.
August 16, 1991.
Ronald G. Meyer and Ruthann Robson, Tallahassee, for appellants.
James J. Parry, Director and Scot A. Silzer, Counsel, Office of Human Resources, Bd. of Regents, Tallahassee, for appellees.
PER CURIAM.
This is an appeal by the United Faculty of Florida (UFF) and its president, Robert Hogner, from an order of the Public Employees Relations Commission,[1] finding that UFF engaged in an unfair labor practice in violation of section 447.501(2)(f), Florida Statutes (1987),[2] by publishing an open letter to students in the Florida International *992 University (FIU) student newspaper soliciting their support in connection with an ongoing labor dispute. The issues presented are whether the letter was protected free speech pursuant to section 447.501(3)[3] and whether section 447.501(2)(f) is unconstitutional.
This proceeding commenced when the Board of Regents (BOR) filed the unfair labor practice charge against UFF after the charge was determined sufficient by the Commission's General Counsel. UFF filed an answer that admitted the operative allegations of the charge and asserted as affirmative defenses that the subject letter constituted "free speech" protected by section 447.501(3) and that section 447.501(2)(f) is unconstitutional. The BOR subsequently moved to amend the petition based on a second letter published by UFF to FIU students, and the Commission allowed the amendment. UFF answered the amended charges, relying on the defenses previously stated.
The hearing officer determined that the pleadings raised no disputed issues of material fact and called on the parties to submit the case on briefs and argument without an evidentiary hearing. He then issued a recommended order which concluded that the letters were free speech protected by section 447.501(3) and did not constitute an unfair labor practice in violation of section 447.501(2)(f). Accordingly, the hearing officer recommended that the charges be dismissed.
The BOR filed exceptions to the recommended order with a supporting brief and requested oral argument. After the matter was heard, the Commission issued a final order essentially adopting the undisputed facts set forth in the recommended order, which were summarized by the Commission as follows:
In early 1988, UFF was engaged in collective negotiations with the BOR. On January 11, 1988, UFF submitted a proposal relating to supplemental summer teaching appointments at Florida International University (FIU). On February 2, UFF published in the FIU student newspaper, the FIU Sunblazer, an item entitled an "Open Letter to FIU Students." It was signed by Robert H. Hogner, President of the FIU Chapter of UFF. The letter set forth UFF's concerns about the shortage of class offerings at FIU during the Summer term and proposed as a solution the gradual reallocation of funds to provide a full academic program in the Summer. It asked students for support in an effort to improve the Summer offerings, stating:
We are asking your help and support in this effort to improve summer offerings. We urge you to clip out the petition form supplied here and to distribute it to your classmates and friends at FIU, then return it to us at the address shown. If you have any other ideas about how we can work together to convince the Administration that inadequate Summer offerings are a serious problem that must be addressed immediately, please phone me (ext. 2571) as soon as possible.
We believe that this is a problem with a solution in which everyone can win  students, faculty, and the University as a whole.
Along with the "open letter" was a "petition," which stated:
We, the undersigned students of Florida International University, do herein (1) express support for a plan to provide a full academic program in the summer, and (2) petition the University to seriously discuss with the United Faculty of Florida the development and adoption of such a plan.
At the bottom of the petition, spaces were provided for signatures, with instructions to "CLIP AND RETURN TO FIU-UFF, UPC AS SOON AS POSSIBLE!"
After the BOR filed the present charge, on March 15, UFF published a second "open letter" to FIU students in *993 the FIU Sunblazer. This letter reflected that two events had occurred since "the receipt by FIU-UFF of your petitions": (1) the allocation of funds for Summer classes had been raised; and (2) the BOR had filed the unfair labor practice charge.
The Commission ruled that the second letter only disseminated information to the students at FIU and did not constitute an unfair labor practice within the meaning of section 447.501(2)(f) because it "merely recites the status of negotiations and contains no express or implicit request for student support or assistance." The Commission cited Clay County Education Association v. School Board of Clay County, 8 FPER Para. 13365, 637-38 (1982), aff'd, 431 So.2d 992 (Fla. 1st DCA 1983), for the proposition that section 447.501(2)(f) only prohibits affirmative acts of calling students to action.
The Commission differed with the hearing officer's recommendation as to the first letter to FIU students, however, and ruled that this letter constituted an unfair labor practice in violation of section 447.501(2)(f). The Commission determined that "the letter instigates and advocates support" by the students of FIU "in a positive manner" for UFF because it requested FIU students "to clip out the petition supplied in the letter, execute it, distribute it to classmates, and return it to UFF" and it called on the students to "support a full summer academic program, which was a bargaining proposal advanced by the UFF at that time."
Addressing UFF's contention and the hearing officer's conclusion that the letter was "free speech" protected by section 447.501(3), the Commission ruled that in the letter "UFF did not simply express its arguments or opinions, but specifically requested students to become involved in negotiations" and that under these circumstances "the generalized terms of Section 447.501(3), must yield to specific prescription [sic] in Section 447.501(2)(f)," citing IBEW, Local 501 v. NLRB, 341 U.S. 694 at 701-02, 71 S.Ct. 954 at 958-60 [95 L.Ed. 1299] (1951). In rejecting the hearing officer's conclusion that the letter constituted free speech under section 447.501(3), the Commission reasoned that although the Commission "must bear in mind constitutional ramifications when considering various interpretations of a statute," citing Hotel, Motel, Restaurant Employees and Bartenders Union, Local 737 v. Escambia County School Board, 7 FPER Para. 12395 (1981), aff'd 426 So.2d 1017 (Fla. 1st DCA 1983), "it would exceed our statutory authority to ignore a statute's plain meaning and construe unambiguous and clear language in a strained fashion to avoid potential constitutional infirmities. E.g., Gulf Pines Memorial Park, Inc. v. Oakland [Oaklawn] Memorial Park, 361 So.2d 695, 699 (Fla. 1978)." The Commission further pointed out that an unambiguous statute "should not be interpreted in any way which would extend, modify, or limit its express terms" and that clear statutory language susceptible of only one interpretation must be effectuated in accordance with the legislative intent so manifested, citing several Florida cases supporting these propositions.
Applying these principles, the Commission concluded that section 447.501(2)(f) applies to UFF's letter, and that the proscription in that subsection prevails over the general language of section 447.501(3) because the latter section simply recognizes that the parties have a first amendment right to communicate. The Commission expressed disagreement with the hearing officer's conclusion that the reference to free speech in 447.501(3) authorizes the commission "to limit Section 447.501(2)(f) to instances of actual or potential exploitation of students" since that section expressly prohibits "instigating or advocating [student] support, in any positive manner." Further, the Commission rejected the hearing officer's conclusion there was no implicit coercive effect on the FIU students as they were in an institution of higher learning because that is exactly what section 447.501(2)(f) prohibits. While agreeing with the hearing officer that 447.501(2)(f) is intended to prevent exploitation of students by their teachers, citing UFF v. Board of Regents, 3 FPER 304 (1977), the Commission explained that such is not its only purpose, for the Commission has also recognized "other objectives in prohibiting solicitation *994 of student support, such as keeping labor disputes out of the classroom and avoiding disruption. Clay Counter Education Association v. The School Board of Clay County, Florida, 8 FPER para. 13365 at 367 (1982), aff'd per curiam, 431 So.2d 992 (Fla. 1st DCA 1983)." The Commission rejected "the hearing officer's suggestion that, notwithstanding the plain meaning of Section 447.501(2)(f), a union can solicit student support for its activities, so long as it is done in a noncoercive fashion." To the extent that section 447.501(2)(f) may invalidly circumscribe a party's First Amendment right to free speech, the Commission said, that is an issue on which the Commission must defer to the judiciary.
UFF urges three points on this appeal from that order: (1) PERC's interpretation of sections 447.501(2)(f) and 447.501(3) was clearly erroneous as a matter of law; (2) section 447.501(2)(f) is violative of Article I, section 4 of the Florida Constitution and the First Amendment of the United States Constitution as interpreted by Florida courts; and (3) section 447.501(2)(f) violates the First Amendment because it cannot survive the strict scrutiny required by applicable court decisions, as it does not advance any compelling state interest to be served by the least restrictive means available.
Because we find section 447.501(2)(f) to be facially unconstitutional, we do not discuss the first two points. We agree with the decision and rationale expressed in the order of the United States District Court for the Northern District of Florida in United Faculty of Florida v. Sloan, Case Number TCA 88-40070-MMP, filed July 12, 1991, holding that this section unconstitutionally abridges appellants' First Amendment right to free speech and enjoining the defendants from enforcing that section (See copy of that decision attached as an appendix to this opinion).
There is no question that section 447.501(2)(f) is both a content-based and viewpoint-based restriction on speech, and regulates speech based on the identity of the speaker. It applies to speech by a public employee organization in any forum, whether public, limited public, or nonpublic, without any restriction as to time. Thus, the statute can be upheld only if these restrictions on speech serve a compelling state interest and the statute is narrowly drawn to achieve that end. Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). While the stated purposes of the statute prohibiting union solicitation of student support, i.e., exploitation of students, keeping labor disputes out of the classroom, and avoiding disruption of school activities, may well qualify as compelling state interests, section 447.501(2)(f) is not narrowly tailored to achieve those interests. As Judge Paul stated in his order in United Faculty of Florida v. Sloan, supra:
Section 447.501(2)(f) "imposes a selective restriction on expressive conduct far `greater than is essential to the furtherance of ... [the compelling state] interest[s].'" See Police Dep't of Chicago v. Mosley, 408 U.S. 92, 102, 92 S.Ct. 2286, 2293-94 [33 L.Ed.2d 212 (1972)]. Section 447.501(2)(f) is overbroad because it prohibits any speech which advocates support for an employee organization's activities: it is not limited to speech of an exploitative nature, to speech that is coercive, to speech that injects labor disputes into the classroom [5. The qualifier "during classroom time" was deleted from the statute. Ch. 74-100, 1974 Fla. Laws 134, 148.], or to speech that causes disruption. Moreover, it is overbroad because it makes no distinction as to the type of protection from exploitation needed for elementary school children from that of university students who would certainly need less, if any, protection from such exploitation.
(Order at p. 8-9.) As that order points out, less drastic and less restrictive means of preventing exploitation of students, injecting labor disputes into the classroom, or causing disruption are available to the state through enforcement of rules regulating teachers' conduct as licensees of the state. Furthermore, section 447.509(1)(c) prohibits employee organizations or their representatives from "instigating or advocating support, in any positive manner, for an employee organization's activities from *995 high school or grade school students during classroom time." In short, the statute is too broad to meet constitutional requirements.
Because the unfair labor practice charge found in this case is premised on a violation of section 447.501(2)(f), our conclusion that this section is unconstitutional mandates reversal of the appealed order and remand with directions to dismiss the charges against appellants.
REVERSED AND REMANDED.
ERVIN and ZEHMER, JJ., and WENTWORTH, Senior Judge, concur.

APPENDIX
IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
 FLORIDA TALLAHASSEE DIVISION
 The United Faculty of Florida
 and Robert Hogner,
 Plaintiffs,
 v.
 JIM SLOAN, MICHAEL MATTIMORE
 and DONNA POOLE, in their official capacities
 as Commissioners of the Public
 Employees Relations Commission, and
 BETTY CASTOR, et al., in their official
 capacities as members of the Board of Regents
 for the State of Florida,
 Defendants.
 ORDER
 CASE NO. TCA 88-40070-MMP
 July 12, 1991.
This cause is before the court on plaintiffs' motion for summary judgment (Doc. 14). Defendants have filed a response (Doc. 36), and plaintiffs have filed a reply to defendants' response (Doc. 52). For the reasons stated below, plaintiffs' motion for summary judgment is GRANTED.

BACKGROUND
Plaintiff, the United Faculty of Florida ("UFF"), is an employee organization representing employees of the Florida Board of Regents ("BOR") at the Florida International University ("FIU"). Plaintiff, Robert Hogner, is the president of the FIU Chapter of UFF. Defendants are the Commissioners of the Florida Public Employees Relations Commission (the "PERC") and the members of the BOR.[1a]
The facts are not in dispute. In February 1988, UFF and Robert Hogner published an "open letter" in The Sunblazer, a student newspaper at FIU. The letter was directed at FIU students and advocated faculty employment during the summer term through increased course offerings.[2a] The letter was signed by Robert Hogner as president of the FIU Chapter of UFF.
Published along with the letter was a "petition," which read as follows:
We, the undersigned students of Florida Intentional University, due herein (1) express support for a plan to provide a full academic program in the summer, and (2) petition the University to seriously discuss with the United Faculty of Florida the development and adoption of such a plan.
Spaces were provided for signatures, and there were instructions to "CLIP AND RETURN *996 TO FIU-UFF, UPC AS SOON AS POSSIBLE!"
The BOR filed an unfair labor practice charge against UFF with the PERC, contending that the letter violated Section 447.501(2)(f), Florida Statutes (1987). Under Section 447.501(2)(f), a public employee organization or anyone acting in its behalf, is prohibited from "[i]nstigating or advocating support, in any positive manner, for an employee organization's activities from high school or grade school students or students in institutions of higher learning." § 447.501(2)(f), Fla. Stat. (1987).
The PERC is charged with enforcing the provisions of Section 447.501(2)(f); however, the PERC does not have the authority to declare a state statute unconstitutional. Subsequent to the filing of this action, the PERC issued a final order which concluded that UFF's publication of the letter violated Section 447.501(2)(f) and, therefore, constituted an unfair labor practice. The PERC ordered UFF to publish notice that UFF's open letter requesting student support was unlawful and that UFF would cease and desist from soliciting student support for its activities.
Plaintiffs believe that Section 447.501(2)(f) unduly restricts their right to freedom of speech in violation of the First and Fourteenth Amendments to the United States Constitution. Consequently plaintiffs have brought this suit for declaratory and injunctive relief to prevent defendants from enforcing the statute.[3a]

DISCUSSION
Summary judgment is proper only if the "pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). As mentioned above, the facts are not in dispute. The sole issue before the court is the constitutionality of Section 447.501(2)(f), Florida Statutes. For the reasons stated below, the court finds that the statute is unconstitutional in that it prohibits speech that is protected by the First Amendment.
The First Amendment, made applicable to the states through the Fourteenth Amendment, prohibits laws which abridge the freedom of speech. "[T]he First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." Police Dep't of Chicago v. Mosley, 408 U.S. 92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972) (citations omitted). Section 447.501(2)(f), Florida Statutes, provides that:
A public employee organization or anyone acting in its behalf or its officers, representatives, agents, or members are prohibited from ... [i]nstigating or advocating support, in any positive manner, for an employee organization's activities from high school or grade school students or students in institutions of higher learning.
Plaintiffs argue, and defendants do not dispute, that Section 447.501(2)(f) is a content-based restriction on speech: if a restriction on speech singles out one subject for regulation, the restriction is content-based. See Consolidated Edison Co. v. Public Service Comm'n, 447 U.S. 530, 537, 100 S.Ct. 2326, 2333, 65 L.Ed.2d 319 (1980). Section 447.501(2)(f) is also viewpoint-based: the statute only prohibits speech which "instigat[es] or advocat[es] support, in any positive manner, for an employee organization's activities." Thus, a letter which disagreed with or denounced an employee organization's activities would not be prohibited by the statute. Finally, Section 447.501(2)(f) regulates speech based on the identity of the speaker: the statute prohibits "[a] public employee organization or anyone acting on its behalf ..." from engaging in certain speech. The statute does not apply to an employer or someone acting on the employer's behalf.
*997 A state's ability to restrict speech on public property depends on the nature of the forum created by the property involved. See Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). In Perry, the Supreme Court identified three such fora: the "traditional public forum" (public streets, sidewalks, etc.); the "nonpublic forum" ("public property which is not by tradition or designation a forum for public communication"); and the "limited public forum" (property which the state has opened for use by the public as a place for expressive activities). Perry, 460 U.S. at 45-46, 103 S.Ct. at 954-55.
In a traditional public forum, a state's power to impose a content-based restriction on speech is extremely limited: the state may enforce such a restriction only if it demonstrates "that [the restriction] is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." Perry, 460 U.S. at 45-46, 103 S.Ct. at 955. In a nonpublic forum, the government may impose reasonable content-based restrictions on speech, provided that the restrictions are "not an effort to suppress expression merely because public officials oppose the speaker's view." Id. Finally, as to a limited public forum, while the state may limit its use to the discussion of certain subjects or to speech by certain speakers, as to those topics or speakers for which the government has made the property available, a limited public forum is treated as a public forum. Therefore, as long as the government maintains the forum, "a content-based prohibition must be narrowly drawn to effectuate a compelling state interest." Id. at 46, 103 S.Ct. at 955.
The evidence is insufficient to determine whether The Sunblazer constitutes a public forum. However, Section 447.501(2)(f) applies to speech by a public employee organization in any forum, whether public, limited public, or nonpublic  at any time. Therefore, in order for Section 447.501(2)(f) to pass constitutional muster, the statute must satisfy the standard for restricting speech in a public forum; that is, the state must show that "[the statute] is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." Perry, 460 U.S. at 45-46, 103 S.Ct. at 955.
Florida courts have quoted the interest that Section 447.501(2)(f) is intended to serve:
The clear purpose and intent of Section 447.501(2)(f) is to prohibit employee organizations, and those acting on their behalf, from seeking student support for union activities. The most obvious evil to be prevented by the statute is the exploitation of students by their teachers, or representatives of teachers, who might otherwise take advantage of the dependent nature of the students' posture in the student-teacher relationship in order to coerce from the students as unwilling pawns in organizational activities in which the students have no economic interest.
United Faculty of Florida v. Board of Regents, 417 So.2d 1055, 1060 (Fla. 1st DCA), modified, 423 So.2d 429 (Fla. 1st DCA 1982) (quoting UFF v. Board of Regents, 3 FPER 304, 306 (1977); see Board of Regents v. Public Employee Relations Comm'n, 368 So.2d 641, 642 (Fla. 1st DCA), cert. denied, 379 So.2d 202 (Fla. 1979).
Furthermore, in determining that UFF's open letter constituted an unfair labor practice, the PERC stated that
[t]he statute clearly prohibits any positive approach by which unions may request student support, and that the prevention of student exploitation was but one of the Legislature's goals. The Commission has recognized other objectives in prohibiting solicitation of student support, such as keeping labor *998 disputes out of the classroom and avoiding disruption.
PERC Order, Exhibit One, Memorandum of Law in support of Plaintiffs' Motion for Summary Judgment (Doc. 15). Thus, the interests which the state seeks to advance through Section 447.501(2)(f), are the prevention of student exploitation, keeping labor disputes out of classrooms, and avoiding disruption.[4]
The educational interests of a university can justify regulations which would be unconstitutional outside the university setting. See e.g., Sellman v. Baruch College, 482 F. Supp. 475 (S.D.N.Y. 1979) (candidates for student government must maintain a minimum academic caseload and grade point average). Further, a university's interest in furthering its "educational mission," if reasonable in scope, may be a compelling state interest. See Widmar v. Vincent, 454 U.S. 263, 267 n. 5, 277, 102 S.Ct. 269, 273 n. 5, 278, 70 L.Ed.2d 440 (1981). However, the sweeping range of Section 447.501(2)(f) prevents any conclusion that the statute is reasonable in scope.
Even assuming that interests such as avoiding student exploitation, keeping labor disputes out of the classroom, and avoiding disruption are compelling, Section 447.501(2)(f) is not narrowly tailored to achieve those interests. Section 447.501(2)(f) "imposes a selective restriction on expressive conduct far `greater than is essential to the furtherance of ... [the compelling state] interest[s].'" See Police Dep't of Chicago v. Mosley, 408 U.S. 92, 102, 92 S.Ct. 2286, 2293-94. Section 447.501(2)(f) is overbroad because it prohibits any speech which advocates support for an employee organization's activities: it is not limited to speech of an exploitative nature, to speech that is coercive, to speech that injects labor disputes into the classroom,[5] or to speech that causes disruption. Moreover, it is overbroad because it makes no distinction as to the type of protection from exploitation needed for elementary school children from that of university students who would certainly need less, if any, protection from such exploitation. Thus, even assuming that the interests are compelling, Section 447.501(2)(f) is not narrowly tailored to achieve those ends.
"`If the State has open to it a less drastic way of satisfying its legitimate interests, it may not choose a legislative scheme that broadly stifles the exercise of fundamental personal liberties.'" Elrod v. Burns, 427 U.S. 347, 363, 96 S.Ct. 2673, 2684, 49 L.Ed.2d 547 (1976). For example, in Minneapolis Star & Tribune v. Minnesota Comm'r of Revenue, 460 U.S. 575, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983), the Supreme Court held that a use tax on paper and ink products was unconstitutional because an alternative means of achieving the same interest of raising revenue was available without implicating the First Amendment: taxing business generally. Similarly, the state of Florida has available to it a less drastic and less restrictive means of furthering the state's interest in preventing the exploitation of students, injecting labor disputes into the classroom, or causing disruption. Under the Code of Ethics of the Education Profession in Florida, chapter 6B-1 of the Florida Administrative Code, any individual holding a valid Florida teacher's certificate:
shall make reasonable effort to protect the student from conditions harmful to learning or to health or safety.
Fla. Admin. Code R. 6B-1.006(3)(a).
shall not intentionally expose a student to unnecessary embarrassment of disparagement.
Id. R. 6B-1.006(3)(e).
shall not exploit a professional relationship with a student for personal gain or advantage.
Id. R. 6B-1.006(3)(h).
shall not intentionally distract or misrepresent facts concerning an educational matter in direct or indirect public expression.
Id. R. 6B-1.006(4)(b).
The penalty for violating any of the above regulations is "revocation or suspension of the individual teacher's certificate, or the other penalties as provided by law." Id. R. 6B-1.006(2). Additionally, the Public Employees Relations Act itself provides a *999 less restrictive alternative. Section 447.509(1)(c), Florida Statutes, prohibits employee organizations or their representatives from "[i]nstigating or advocating support, in any positive manner, for an employee organization's activities from high school or grade school students during classroom time."
In response to plaintiffs' arguments that Section 447.501(2)(f) is unconstitutional, defendants rely on Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), Pickering v. Board of Educ., 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and Ferrara v. Mills, 781 F.2d 1508 (11th Cir.1986) to argue that the speech at issue here is not entitled to First Amendment protection. Defendants' reliance on those cases is misplaced. Those cases involved an employee's dismissal after the employee spoke out on a certain topic or topics. The issue in those cases was whether the employee was dismissed in retaliation for speech which was protected by the First Amendment. In order to determine whether the employee's speech was protected, it was necessary to determine whether the employee's speech involved a matter of public concern. The issue in the instant case is whether Section 447.501(2)(f) unconstitutionally restricts speech which is protected by the First Amendment. The instant complaint contains no allegations that an employee of the BOR has been sanctioned or dismissed in retaliation for protected speech. Therefore, the employee dismissal cases cited by defendants are inapposite.
Finally, while a state has a right to exclude First Amendment activities that "substantially interfere with the opportunity of other students to obtain an education," Widmar v. Vincent, 454 U.S. 263, 277, 102 S.Ct. 269, 278, 70 L.Ed.2d 440 (1981), or which cause "material and substantial interference with schoolwork or discipline," Tinker v. Des Moines Indep. Community School Dist., 393 U.S. 503, 511, 89 S.Ct. 733, 739, 21 L.Ed.2d 731 (1969), there is no indication that the open letter which appeared in The Sunblazer caused such interference. The hearing officer appointed to conduct a hearing on the unfair labor practice charge found that no exploitation of students occurred as a result of the letter because: "(1) there was no evidence that any students actually signed the petitions as a result of intimidation; (2) the `open letter' did not contain any overt threat; and (3) there was little potential for an implied threat because the letter was published in a University environment." PERC Order, Exhibit One, Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment (Doc. 15). The hearing officer also noted that "a more direct request by professors for student assistance, for example, by making an oral request in the classroom and passing the open letter to students as they left class might constitute a different kind of threat." Hearing Officer's Recommended Order, Exhibit A, Defendants' motion for summary judgment (Doc. 20).

CONCLUSION
Section 447.501(2)(f), Florida Statutes, restricts speech on the basis of content, viewpoint, and speaker identity. Furthermore, while a state has more authority to regulate speech on campus than to regulate speech in a public forum located off campus, Section 447.501(2)(f) applies to speech by a public employee organization in any forum, whether public, limited public, or non-public. Therefore, the statute is subject to strict scrutiny. While the interests sought to be served by Section 447.501(2)(f) may be compelling, the statute is not narrowly drawn to achieve those ends. Furthermore, Section 447.501(2)(f) is overbroad.
Accordingly, it is
ORDERED:
1. Plaintiffs' motion for summary judgment (Doc. 14) is GRANTED.
2. Section 447.501(2)(f), Florida Statutes (1987), is unconstitutional on its face in that it prohibits speech that is protected by the First Amendment to the United States Constitution.
3. Defendants are enjoined from enforcing Section 447.501(2)(f), Florida Statutes.
*1000 4. The Clerk is directed to enter judgment in favor of the plaintiffs, the United Faculty of Florida and Robert Hogner.
DONE AND ORDERED this 12th day of July, 1991.
 /s/ Maurice M. Paul
 United States District Judge
NOTES
[1] The Commission has notified the court that it chooses not to participate in this appeal. The Board of Regents has filed an answer brief.
[2] The cited section provides:

(2) A public employee organization or anyone acting in its behalf or its officers, representatives, agents, or members are prohibited from:
* * * * * *
(f) Instigating or advocating support, in any positive manner, for an employee organization's activities from high school or grade school students or students in institutions of higher learning.
[3] That section provides in pertinent part:

Notwithstanding the provisions of subsections (1) and (2), the parties's rights of free speech shall not be infringed, and the expression of any arguments or opinions shall not constitute, or be evidence of, an unfair employment practice or any other violation of this part, if such expression contains no promise of benefits or threat of reprisal or force.
[1a] Originally, the defendants to this action were the Commissioners of the PERC and the BOR itself. However, by order dated September 22, 1989 (Doc. 33), the court granted the BOR's motion for judgment on the pleadings and dismissed the BOR from the case on the basis of Eleventh Amendment immunity. In that same order, however, the court granted plaintiffs' motion to amend their complaint for the purpose of naming the individual members of the BOR, in their official capacities, parties to this action.
[2a] The letter stated, in pertinent part:

We are asking your help and support in this effort to improve summer offerings. We urge you to clip out the petition form supplied here and to distribute it to your classmates and friends at FIU, then return it to us at the address shown. If you have any other ideas about how we can work together to help convince the administration that inadequate summer offerings are a serious problem that must be addressed immediately, please phone me (ext. 2571) as soon as possible. We believe that this is a problem with a solution in which everyone can win  students, faculty, and the University as a whole.
[3a] UFF has appealed the PERC's determination that UFF was guilty of an unfair labor practice to the Florida First District Court of Appeal. Defendants moved to abate the instant proceedings pending resolution of the appeal. By order dated September 22, 1989, defendants' motion to abate was denied. See Doc. 20.
[4] Defendants, in their response to plaintiffs' motion for summary judgment (Doc. 36) also state that these are the interests the state seeks to advance.
[5] The qualifier "during classroom time" was deleted from the statute. Ch. 74-100, 1974 Fla. Laws 134, 148.